M. Irving Jester *vs.* Tony Naples.

First Judicial District, Hartford, March Term, 1920.
Prentice, C. J., Wheeler, Beach, Gager and Case, Js.

Under § 4746 of the General Statutes, a conditional contract of sale which is unacknowledged and unrecorded, while valid as between the parties, is insufficient to protect the property from attachment for the debts of the vendee while in his possession.

The voluntary release or discharge of such an attachment, made by a creditor of the conditional vendee for a pre-existing debt, destroys his attachment lien and divests him of all interest in and control over the property; and upon its bona fide return to the original owner, he may resell it to the original vendee by a properly executed and recorded bill of sale, and thus secure his own interest in the property from a second attachment by the vendee's creditor for the same debt.

In the present case the creditor insisted that the first contract of sale was still in effect when he made his second attachment, and that the rights of the parties were to be determined from that standpoint. *Held* that this contention was conclusively disposed of by the adverse finding of the trial court.

Argued March 3d—decided April 17th, 1920.

Action of replevin for an automobile, brought to the City Court of New Britain and thence, by appeal of the plaintiff, to the Court of Common Pleas in

Hartford County and tried to the court, *Smith, J.;* facts found and judgment rendered for the plaintiff, and appeal by the defendant. *No error.*

Jester delivered an automobile to one Calabretta in August, 1917, under a writing which purported to be a conditional contract of sale, but was neither acknowledged nor recorded. Calabretta was at that time indebted to Naples, who in the following October sued him for the debt and attached the automobile. Naples then knew that substantially all the purchase price of the automobile remained unpaid by Calabretta, and knew and had informed Calabretta that the attempted conditional bill of sale was defective. Three days after the attachment was made, Naples released and discharged it upon Calabretta's promise to pay by small instalments the debt upon which the suit had been brought, and Calabretta thereupon returned the automobile to Jester, who took possession of it and subsequently again sold it to Calabretta under a new conditional bill of sale of the date of the transaction, October 24th, 1917, which in all respects conformed to the statute and was promptly recorded, and by which title to the automobile remained in Jester until it was fully paid for. Calabretta thereafter remained in possession of the automobile until June 22d, 1918, when it was again attached by Naples in another action brought by him against Calabretta to recover the still unpaid debt upon which the first suit was founded. The second action was prosecuted to a judgment against Calabretta, upon whose neglect to pay it the automobile was sold under execution at public auction, and bought in for a nominal sum by Naples. At the time of this execution sale, Calabretta's payments under the conditional bill of sale were in default, and Jester by its terms was entitled to the possession of the automobile. After Naples had taken possession of the automobile, Jester requested

payment from him of the amount still due from Cala-
bretta on the purchase price, and upon his refusal to
pay this action was brought.

The appeal seeks corrections of the finding, and all
the evidence has been certified in that connection.
Other grounds of appeal assign error in the ruling of the
court that when the second attachment was made the
automobile was not attachable as the property of
Calabretta, but that title to it was in Jester.

*Frederick B. Hungerford,* for the appellant (defend-
ant).

*Mortimer H. Camp,* for the appellee (plaintiff).

CASE, J.   Save as to one unimportant fact without
effect upon the result, the evidence warrants the find-
ing, which must stand as made.

While the failure to acknowledge and record the
paper under which the automobile was first delivered to
Calabretta did not impair the full force of its conditions
as between himself and Jester, this brought it within the
control of § 4746 of the General Statutes, and made the
property liable to seizure for Calabretta's debts.   So
long as it remained under attachment in the first action
brought by Naples, Jester's rights were wholly post-
poned to those of the creditor, but when the attachment
was discharged, the interrupted contract relations of
Jester and Calabretta came again into undisturbed
operation.   Since their contract as it stood was ineffec-
tive for its plainly intended purpose, they might of
course then take any proper steps to cure its defects
and insure an unqualified legal recognition of their
respective rights in the property which was the subject
of it.   This was accomplished when the second condi-
tional bill of sale was recorded, and the only question

involved here is whether Jester's title was thereafter secure against any further attempt of Naples to subject the automobile to the satisfaction of the original debt.

In effect the defendant's claim is that by his first attachment he somehow acquired an equity or interest in the automobile that survived his subsequent release of it, and became superior to Jester's claim of title when he finally attached it again. The quality of this claimed equity is left in some obscurity. The discharge of the first attachment of course destroyed the lien. It is not pretended that anything remained of that after the release was given. The obvious effect of this was to restore both the property and the relative rights of the parties in it to the *status quo* existing before Naples first sued Calabretta. It is therefore a little difficult to understand how Naples retained any benefit after his voluntary surrender of every hold on the automobile which his attachment had of itself given him. Although his argument suggests it, the defendant can hardly claim to have established an equitable relationship with the property by his mere concurrent expression of a purpose to attach it again and establish another lien if Calabretta should meanwhile fail to pay the debt. Whether or not he said as much to Calabretta is of no consequence. It added nothing to his rights, if he did. Confessedly the release of the attachment left both parties to the sale at full liberty to treat the automobile as they pleased by mutual agreement. Naples could not have prevented this, after relinquishing the control which the attachment gave him. The bona fide return of the automobile to Jester would have put it beyond Naples' reach, or beyond the reach of any other creditor of his class who had neglected his opportunity to take it by attachment before such a return was accomplished, for it is to be remembered that Calabretta's debt to Naples was an existing one before the automo-

bile first left Jester's possession; it was not, therefore, even in the most remotely constructive sense, an indebtedness influenced or induced by an apparent ownership of the automobile as potential security for its payment.

The one advantage then which accrued to Naples from the infirmities of the first conditional contract of sale, was the right to enforce the appropriation of the property to the payment of his claim against Calabretta so long as it remained in the latter's possession under the defective instrument. He might forego the exercise of his privilege altogether, or he might pursue it through the several stages necessary to secure its full benefit; but there was no middle course by which he could strengthen or enlarge his strictly limited interest in the property. Having released the attachment, he surrendered the conditional superior right it carried with it, and thereafter remained in no better position than a creditor who had never acted at all.

The scope of the statute has been commented upon in an earlier case where practically the same view of its limitations was expressed: "The purpose is to thus protect persons who have acquired liens or interests in the property while in the vendee's possession, not to give his creditors and others a perpetual right to secure liens upon it because of the temporary possession of the vendee under an unrecorded conditional contract of sale." *American Clay Machinery Co.* v. *New England Brick Co.*, 87 Conn. 369, 375, 87 Atl. 731.

In his reliance upon the case last cited, and upon *Camp* v. *Thatcher Co.*, 75 Conn. 165, 52 Atl. 953, we think the defendant quite unwarrantably confuses his own position with that of the creditors whose interests were, in both the cases referred to, held to be of controlling importance. In *Camp* v. *Thatcher Co.*, the creditor had paid out money upon her justified assump-

tion of the vendee's ownership as evidenced by possession under an unrecorded bill of sale. Her equity was thus in the clearest sense an intervening one directly traceable to the statutory informality in the contract. The equities involved in the case of *American Clay Machinery Co.* v. *New England Brick Co.,* are those of creditors as to whom the vendee "had acquired new obligations" while the property remained in its possession under the unrecorded instrument. Here, too, the controlling test is obviously that of an actual or constructive reliance upon apparent ownership of the property involved when credit was given. As we have already pointed out, this vital element is wholly lacking here. The debt of Calabretta existed before the automobile came in sight, and the only interest which Naples ever acquired in it was by virtue of a process open to any creditor of Calabretta's as to any of Calabretta's visible property. The superior hold which this gave him upon the automobile lasted only as long as the attachment remained effective. Upon its discharge, Naples was relegated to the position of an ordinary creditor. He retired from that enterprise no richer in available equity or interest than when he went into it.

Several reasons of appeal are devoted to an effort to show that the first contract of sale is still in effect, and that the whole transaction must be viewed from that standpoint, rather than from that of a new contract entered into after the release of the first attachment. So far as the distinction is of consequence, it is conclusively disposed of by the finding.

There is no error.

In this opinion the other judges concurred.