RE ESTATE OF H. L. PERKINS,

GUSTAVUS PERKINS, CLAIMANT.

ADDISON COUNTY, 1893.

BEFORE: TYLER, MUNSON, START AND THOMPSON, JJ.

*Parol evidence to vary deed. Nudum pactum.*

1.  Parol evidence is not admissible to vary the terms of a deed by showing that the grantor, by previous arrangement, remained the owner of it, with the right to remove a building included within the terms of the grant.

2.  A subsequent promise by the grantee to pay the grantor the value of said building would be void as without consideration, for the building already belonged to the grantee.

Appeal from a decree of the probate court for the district of New Haven, accepting the report of commissioners for the allowance of claims against the estate of Helen L. Perkins, by which the claim of the plaintiff was disallowed. Heard upon the report of a referee at the June term, 1892, TAFT, J., presiding. Judgment for claimant. The estate excepts. The opinion states the case.

*Stewart & Wilds* for the estate.

The original contract was void as that of a *femme covert*, and cannot be made the consideration for a new promise. *Hayward* v. *Barker*, 52 Vt. 429.

This was a parol contract to part with an interest in real

estate and within the statute of frauds.  *Buck* v. *Pickwell*, 27 Vt. 157; *Bro. Fr.*, § 263.

*Henry Ballard* for the claimant.

The deed did not convey the barn.  *Hibbard* v. *Hurlburt*, 10 Vt. 173; *Lippet* v. *Kelley*, 46 Vt. 517; *Hull* v. *Fuller*, 7 Vt. 100, 105; *Mossie* v. *Watts*, 6 Cranch 148.

Upon the question as to whether it did the conduct of the parties is admissible.  *Keith* v. *Day*, 15 Vt. 660, 670.

The opinion of the court was delivered by

TYLER, J.   The referee has reported that in April, 1880, the plaintiff purchased a house lot with a dwelling house thereon, situated in Burlington, for $1,300, for which he gave his promissory note and secured its payment by a mortgage on the property.   He intended it as a homestead for the intestate and her husband, Wilbur M. Perkins, who at once moved into the house and resided there until about the time of the death of Wilbur in the fall of 1888.   It was understood by the three persons that the plaintiff would soon convey the property to the intestate, and it was always regarded as hers after she and her husband took possession.

In the fall of 1880, the plaintiff made an oral agreement with the intestate and her husband that the plaintiff should build a barn on the west end of the lot, have a right of way to it, and the use of the barn while the arrangement continued, except one horse stall, which the other parties were to have for the use of the land on which the barn stood. It was agreed that the plaintiff might move the barn whenever he chose, and that if he did not move it, and Wilbur and his wife should sell the property, they should then pay the plaintiff the cost of the building.   Under this agreement the plaintiff built a barn on the site at an expense of $200, completing it in 1880.   It was not regularly underpinned,

but was set on low stone piers and constructed so that it could be moved without injury. It was built so that it might be converted into a dwelling house, and the plaintiff then "had some idea that he might at some time move it onto his own adjoining lot" for that purpose. The parties used the barn according to the agreement until the death of the intestate, in July, 1889.

February 15, 1881, the plaintiff, by warranty deed, conveyed the premises in fee to the intestate, subject to the $1,300 mortgage, which she assumed and subsequently paid, excepting about $400. The description in the deed is as follows : "The following described land and premises situated on the west side of Elmwood avenue in the city of Burlington, viz. : The land with the dwelling house thereon which was conveyed to me by George L. Barstow by deed dated April 1, 1880, and of record, etc. The lot of land hereby conveyed has a frontage on said avenue of 41 feet 6 inches, and a depth of 132 feet, with dwelling house and barn thereon," etc.

The parties continued to occupy the barn after the conveyance as they had done before. It did not appear that either Wilbur or his wife ever claimed to own the barn, or denied that it was the property of the plaintiff. Their conduct was always consistent with the agreement. In 1886, when the plaintiff was about to build on Clark street, and thought of moving the barn thither, Helen told him that she would pay for it when she sold the place if he would leave it. On another occasion before this, when the plaintiff thought of moving the barn to his adjoining lot, she requested him not to move it, and made a like promise to pay for it when she sold the premises. On other occasions she told other persons that the barn was the plaintiff's, that she wished to sell the property so as to settle with him for the barn, and that if the place were sold she should have to pay for the barn. She made no such promise or admission after

her husband's death.    After her decease her administrator sold and conveyed the premises with the barn thereon.

The finding of the referee of the agreement relating to the building and removal of the barn and of the promises to pay for the same was based wholly upon evidence received subject to the defendant's objection and exception.    The only question submitted by the referee was whether this evidence was properly received.

It is an elementary rule of law that when a deed or other written instrument has been executed, delivered and accepted, all prior parol agreements are merged in the deed or writing, and cannot afterwards be set up to contradict or vary the same.

The legal import of this deed, as between the grantor and grantee, was to convey the lot of land and whatever was upon it as a part of the realty.    The fact that the dwelling house is mentioned is of no legal importance except as matter of description.    *Hagar* v. *Brainerd et al.*, 44 Vt. 294.

We think there can be no doubt but that the barn, constructed and supported as the report shows this was, would have been conveyed by the language of the deed, though it had not been mentioned.    *Powers* v. *Dennison*, 30 Vt. 752.    The language is not equivocal or ambiguous. Oral evidence can no more be received to vary the legal import of a deed than to vary its language.    *Brandon Manufacturing Co.* v. *Morse*, 48 Vt. 322.

It is argued that the intention of the parties must govern. This is true, but the intention must be ascertained from the language of the deed itself, construed in the light of the attendant circumstances.    *Mills* v. *Catlin*, 22 Vt. 98 ; *Smith* v. *Fitzgerald*, 59 Vt. 451.    An agreement resting in parol, contrary in its terms to the purport of the deed, cannot be said to be an attendant circumstance.    Such circumstances are the facts that the deed refers to, or may probably have

been intended to refer to, or which identify any person or thing mentioned in it. But if the instrument has one distinct meaning in reference to the circumstances of the case, it must be construed accordingly, and evidence to show that the author intended to express some other meaning is not admissible. Steph. Dig. of Law of Ev., Art. 91.

The deed contains no reservation of the barn. The premises are first described as "the land with a dwelling house thereon" which was conveyed to the plaintiff by a deed from Barstow, and reference is made to that deed and the record thereof. Then there is the further description as to frontage and depth, and that the lot has a dwelling house and barn on it. There is nothing inconsistent in these particulars in the description. The last clause is merely more definite than the first: it locates the lot.

When the original oral agreement was made the intestate was under legal disability as a *femme covert*, and her promise was void. *Brown* v. *Sumner*, 31 Vt. 671 ; *Hayward* v. *Barker*, 52 Vt. 429. When the subsequent promises were made her disability had been removed by No. 140, Laws of 1884, and she was then capable of making contracts concerning her own property. But these promises were to pay for property to which she had already acquired title, and were therefore without consideration and void, and would have been so had it been affirmatively found that in consequence of such promises the plaintiff waived his right to move the barn or omitted to do any act that he otherwise would have done.

In the view that we have taken it is unnecessary to consider the other grounds of defence suggested in the argument.

*Judgment reversed and judgment for the defendant.*