HELEN P. CAMP vs. THE CHARLES THATCHER COMPANY.

Third Judicial District, New Haven, June Term, 1902.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

The lessee of a building, rented for a hotel annex, agreed to put in a
suitable heating system and connect it with the heater in the hotel,
in consideration of which the lessor was to contribute four-fifths of
the expense. The defendant supplied and installed the apparatus—
a hot water circulating system—in the usual manner, under a written
contract with the lessee which provided that it was to remain the
personal property of the defendant until fully paid for, notwith-
standing its annexation to the building. This contract was not ac-
knowledged, nor was it recorded for more than two months and
until after the lessor had paid his contribution and the lessee had
become insolvent. In an action by the lessor to prevent the threat-
ened removal of the apparatus by the defendant, it was *held :—*
1. That as matter of law the contract was not recorded within a " rea-
sonable time," and therefore the sale, as to the rights of the lessor,
was an absolute one (General Statutes, Rev. of 1902, §§ 4864, 4865).
2. That the apparatus had been so attached to the building as to be-
come part of the realty, pursuant to the manifest intent of the
parties.
3. That inasmuch as the apparatus, if detached, would lose most of its
value to the lessor, and would leave his building in bad condition
and expose its occupants to annoyance and damage difficult of as-
certainment, he could not be said to have adequate remedy at law,
and was therefore entitled to an injunction.
Where an article is claimed to be a fixture, the mode of its attachment
is less important than the intention of the parties in making it.

Submitted on briefs June 4th—decided July 18th, 1902.

ACTION for an injunction, brought to the District Court of
Waterbury, and tried to the court, *Cowell, J. ;* facts found and
case reserved for the advice of this court. *Judgment for plain-
tiff advised.*

On July 4th, 1899, Arthur B. Anderson, who was the tenant
of the Hotel Platza in Waterbury, received from the plaintiff
a lease of a five-story brick block adjoining the hotel, for use
as an annex to it, for $4\frac{3}{12}$ years from September 1st, 1899, at
a monthly rent of $106.50, with possession rent-free until

that day, and the right of renewal for another term of five years, at a monthly rent of $115. This lease contained the following provision: "It is further agreed that the lessor shall pay to the lessee the sum of $800, and all sinks, house boilers, and washtubs now in said building, and in consideration thereof the lessee is to immediately provide said building with a suitable and proper system of heating, and connect the same with the heater now in the Hotel Platza. And the lessor further agrees that the lessee may at his own expense construct two or more passages through the easterly wall of said building, provided the lessee shall obtain permission in writing to do so from the other parties interested in said wall; and in consideration of the above the lessee agrees to provide the stairs in said building with rubber stair mats or carpet."

Anderson took immediate possession, and on July 10th entered into a written agreement with the defendant, by which the defendant agreed to " furnish and erect in the proposed addition to the Platza hotel . . . a hot water heating apparatus complete, less boiler," connected with a heater then in the basement of the hotel. The price was to be $1,089, and $89 of this was to be discharged by an allowance of that sum for the sinks, washtubs and boiler, then in the plaintiff's building, which the defendant was to take out. This agreement contained the following provision: "It is hereby expressly understood and agreed that the title to all the above-described property shall be and remain in our name until all the above-mentioned sums of money are paid; and it is further understood and agreed that in case of default in the payment of any of the instalments as above provided we are empowered under this agreement to enter upon said premises, and take possession of and remove said property at any time; and that we shall have the right under this agreement to retain any sum or sums of money that may have been paid by you as liquidated damages for the use of said property; and further, it is expressly agreed that the property above-mentioned shall be and remain personal property in whatsoever manner it may be annexed to realty." This paper was lodged for record with the town clerk on September 20th, 1899. Work under it was

begun in July. The hot water pipes were connected with the boiler in the cellar of the Platza hotel, thence through the cellar wall into the plaintiff's cellar, and thence to the several floors above, through openings made for that purpose, where they were connected with radiators, which in turn were connected with other pipes to return the drip to the boiler in the cellar of the Platza hotel. The system is known as the "circulating system," and these pipes and radiators were put in and placed in the usual manner of installing hot water heating pipes. The several pipes formed a continuous line from the boiler or furnace to the radiators, and thence to the furnace again. They were not secured to the walls: the radiators rested upon legs, and these in turn upon the floors. At the same time the defendants removed from the plaintiff's building the sinks, house boilers, and washtubs that were in said building prior to the lease, and gave Anderson a credit for the same of $89. As the work progressed Anderson gave the defendant orders upon the plaintiff, amounting to $800, and for the sinks, house boilers, and washtubs, being the amount and the property agreed to be paid and delivered to Anderson under said lease; all of which were paid and delivered by the plaintiff to the defendant under said orders before August 15th, 1899. While the work of putting in said heating system was in progress, the defendant gave the plaintiff notice that it intended to claim a mechanic's lien upon said real estate for the value of the labor and materials furnished in putting in said heating system. After said notice was given by the defendant to the plaintiff, she refused to pay the amount agreed upon for putting in said heating system, until a waiver of the right to file a mechanic's lien was procured from the defendant. On or about August 1st, 1899, and about a week before the defendant procured the first order from Anderson upon the plaintiff, Anderson showed said lease to the defendant, and procured from the defendant a waiver in writing of its right to said lien for said heating system, which waiver Anderson gave to the plaintiff before she paid said first order. The defendant gave Anderson credit for the amount of said orders ($800), and for sinks, boilers, etc., removed ($89); leaving a

balance of $200 unpaid under the contract between Anderson and the defendant on August 15th, 1899. On August 15th, 1899, the defendant stopped work under said contract. At that date the defendant had completed its contract with Anderson, except that it had not covered all the pipes in the cellar,—a matter that would have taken but little labor or material. The defendant did no more work under said contract. On or about September 20th, 1899, Anderson became hopelessly insolvent. On September 23d, 1899, he made a voluntary assignment in insolvency, and lodged the same with the Court of Probate on the same day. Prior to September 20th, 1899, when the contract was recorded, the plaintiff had no definite knowledge of the terms of the contract between Anderson and the defendant, and did not prior to that date know that it was a conditional sale. One Moses Harris succeeded Anderson in the Hotel Platza, and in November, 1899, the plaintiff leased her building to him for five years from October 1st, 1899, and said building has ever since been used for hotel purposes under said lease.

Said pipes and radiators could be taken out of the plaintiff's building without any great injury to its structural strength, though it would be considerably marred by the holes cut in the floors when they were installed, and the attachments to sustain the apparatus in place. If a new apparatus of a similar character were installed in its place, the injury to plaintiff's building would not be nearly as much as if some other or different system were introduced. As said building now under lease to said Harris is used for hotel purposes, any change in its heating plant would cause trouble and annoyance as well as the actual expense. If said pipes and radiators were taken out of the plaintiff's building they would not be greatly injured, but in such case they could be sold only as second-hand goods, and would bring very much less than the original cost.

The questions reserved were: (a) Did said heating system when placed in the building as described become a part of the real estate? (b) Can defendant, by reason of not having its contract with Anderson acknowledged before competent

authority, and its failure to record the same until September 20th, 1899, claim said property against the plaintiff? (c) May the defendant remove said heating system by replevin or otherwise? (d) Ought the defendant to be restrained by injunction from removing the same? (e) Has the plaintiff adequate remedy at law if the defendant shall remove the same, by replevin or otherwise?

*Charles G. Root* and *Frederick M. Peasley*, for the plaintiff.

*John O'Neill*, for the defendant.

BALDWIN, J.   Anderson, under his lease, was bound to provide the plaintiff's building immediately with a suitable and proper system of heating, connected with the heater in his hotel, in consideration of which the plaintiff was bound to pay him $800 and to give him all sinks, house boilers and washtubs then in her building.   He undertook to make this provision by his contract with the defendant.   By that, the defendant was to put in the new apparatus and receive the old in part payment; but no title to the new was to pass to Anderson until full payment had been made, and it was to remain personal property, however it might be annexed to the building.   There was thus, in effect, a conditional sale of the new apparatus.   That it was coupled with an agreement by the vendor to set it up in a particular building, did not relieve it from the operation of the recording statute (Public Acts of 1895, p. 565, General Statutes, Rev. of 1902, § 4864).   The contract was never acknowledged.   Not having been recorded, also, until more than two months after its date, and then one month after its substantial execution on the part of the defendant and the payment to it by the plaintiff of all that she was to contribute towards the expense of the improvement, it was, as matter of law, not recorded within a reasonable time.   The sale, therefore, as respects the rights of the plaintiff, was an absolute one, whether the apparatus is or is not to be regarded as permanently attached to the building.

But it was so attached to it as to become part of the realty. The mode of attachment, where an article is claimed to be a fixture, is less important than the intention of the parties in making the attachment. *Tolles* v. *Winton*, 63 Conn. 440, 445. In the present case, the lease shows that plumbing of one kind was to be ripped out of a city block and replaced by plumbing of another kind, by the lessee, but mainly at the expense of the lessor. It would naturally be expected, under these circumstances, that it should be put in to remain. To remove it would leave the building considerably marred, and the value of the apparatus after removal would be very much below its cost. All this must have been foreseen when the lease was executed, and also by the defendant when it made its contract with Anderson. The effect of what was done under these instruments must be determined in view of the results that were thus contemplated.

That the defendant regarded the plumbing as an improvement of, and so as an addition to, the real estate, is also established by its notice to the plaintiff that it intended to claim a mechanic's lien,—a notice after which she refused to make any payments towards the cost of the apparatus, until the claim was waived.

It is contended that the plaintiff, to have equity, must do equity, and that her complaint should have alleged a willingness to pay the difference between the contract price of $1,089 agreed on, and the $889 which she has paid to the defendant on Anderson's order.

The plaintiff was a stranger to that contract. She was ignorant of its terms until after all work done under it had been completed. Anderson was absolutely bound to provide her building with the new apparatus, on her paying him $889, and became so bound in sole consideration of her agreement to pay that sum. Having paid it, it is of no moment to her that he may owe a greater sum to the contractor by whose agency the apparatus was put in.

The defendant now threatens to replevy the articles which it supplied. Being real estate, they are, of course, not legally repleviable. They are, however, physically capable of detach-

ment.  If·detached, they would, as respects the plaintiff, lose most of their value.   Her building would also be left in bad condition, and annoyance given to its present tenant, although the extent of his, and therefore of her damage, by such annoyance, it would be difficult to ascertain, by reason of the uses for which his lease was taken.   She cannot, under these circumstances, be said to have adequate remedy at law, and is therefore entitled to the injunction which she asks.

The District Court of Waterbury is advised to render a judgment in her favor, with costs, in conformity with this opinion.   Costs will be taxed, also, in her favor in this court.

In this opinion the other judges concurred.