BENJAMIN F. CLEAVELAND v. HARRIETTE S. GABRIEL

BALDWIN, C. J., KING, MURPHY, ALCORN and MACDONALD, Js.

Argued October 6, 1961—decided April 4, 1962

*Edward J. Daly, Jr.*, with whom, on the brief, was *Catherine G. Roraback*, for the appellant (defendant).

*William Ford*, for the appellee (plaintiff).

MACDONALD, J. The plaintiff sued the defendant to recover the price of certain items of farm machinery and equipment sold to her at a public auction held on April 8, 1959, on the Cleaveland farm in Salisbury. At that time the farm was owned by the defendant and was occupied and operated by the plaintiff as the defendant's lessee. The plaintiff recovered a judgment for $6233.56, from which the defendant has appealed.

With one exception, the defendant has neither briefed nor argued the assignments of error directed to correction of the finding and the rulings on evidence. These assignments are therefore considered as having been abandoned. *Martino* v. *Grace-New Haven Community Hospital*, 146 Conn. 735, 736, 148 A.2d 259; Maltbie, Conn. App. Proc.

§ 327. The one correction sought cannot be made, as will later appear. This leaves only the assignments which deal with the two principal conclusions reached by the court.

The finding discloses that the items which are the subject of this action were purchased by the plaintiff from his father in a transaction evidenced by a bill of sale to the plaintiff and by a chattel mortgage from the plaintiff to the Farmers Production Credit Association. Both were filed on November 7, 1956, in the personal property records of the town of Salisbury. On July 15, 1957, the plaintiff's parents, Paul B. and Gladys T. Cleaveland, conveyed Cleaveland farm by warranty deed to the defendant, who simultaneously entered into a lease with the plaintiff under which he occupied and operated the farm from July 15, 1957, to April 15, 1959. During this period the defendant had in her employ A. B. Riddell, who acted as, and was held out by the defendant to the public and to the plaintiff in particular as, general manager of her affairs and property, including the farm leased. Immediately prior to the auction, Riddell, acting in behalf of the defendant, was negotiating a lease of the farm to Francis J. Gomez, who informed both Riddell and the defendant that he would not lease it unless the specific items of equipment involved in this action were left on the farm and were included in the lease. On April 8, 1959, the plaintiff offered for sale at the auction certain machinery and equipment used by him in the operation of the farm, including the items in controversy. The defendant did not attend the auction, but Riddell did. He requested Bert H. Pipa to bid in these items on behalf of the defendant. Pipa did so and submitted the successful bids for each of the items. At the close of the auc-

tion, the defendant failed to pay for the equipment thus bid in by Pipa at Riddell's request and since then has refused to pay for it.

The first issue pursued by the defendant is her claim that the items of equipment involved here were, at the time of the auction sale, already her own property and that the court erred in finding that the plaintiff was the owner and in failing to find that the items were annexed to the realty in such a way as to be part thereof and therefore, by operation of law, the defendant's property. In support of this claim, she relies strongly upon the manner in which some of the items of equipment were installed—notably, the barn cleaner, which, although itself unfastened, operated on a mechanism bolted to the floor; the water heater, which was connected with the water system; the bulk milk tank, which, although too large to remove without taking off and replacing a door and casing, was not bolted to the floor; the pipeline of the milking system, which ran at some points through holes cut in the walls; and a milker pump, motor and control box in the milking system, the control box being screwed into the wall and connected with the electrical system. On the basis of the facts, the defendant argues that these items became a part of the real property when they were installed and that title to them vested in her when she purchased the farm.

Ordinarily, if not invariably, the character of personal property attached to realty is to be determined as of the date when the property is attached. *Giuliano Construction Co.* v. *Simmons,* 147 Conn. 441, 443, 162 A.2d 511; *Lesser* v. *Bridgeport-City Trust Co.,* 124 Conn. 59, 63, 198 A. 252. For it to acquire the character of a fixture, it is essential that "a permanent accession to the freehold was in-

tended to be made by the annexation." *Capen v. Peckham*, 35 Conn. 88, 94; *Stone v. Rosenfield*, 141 Conn. 188, 192, 104 A.2d 545. As we recently stated in *Giuliano Construction Co. v. Simmons*, supra, "[w]hether a permanent accession to the freehold was intended is to be determined from a consideration of all the facts, including the character of the annexation, the nature and adaptation of the article annexed to the uses and purposes to which the land was appropriated at the time of the annexation, and the relation of the annexer to the property." Since some of the equipment here was physically attached to the barn, in one way or another, and was adapted primarily to use in a barn, there was some objective indication of an intention to annex the equipment to the barn. The finding, however, fails to disclose the identity of the annexer or the circumstances under which the annexation was made, and this gives rise to a consideration of the question of the burden of proof.

In actions to recover the price of goods sold and delivered, the burden is on the defendant to prove matters of defense generally and, more specifically, to prove the want of title in the plaintiff. *Bradley v. Gulf States Creosoting Co.*, 209 Miss. 747, 749, 48 So. 2d 363; 78 C.J.S. 90, 91, § 451; 77 C.J.S. 1283, § 365. Here, the sale took place on the defendant's farm at a time when the plaintiff was in possession under the lease from the defendant, as extended by an oral agreement. One week later, the extended term of the lease expired and the defendant took possession of the farm. At that time, the equipment was still in the barn. Thus, delivery of the equipment to the defendant was completed when she took possession of the barn, and she was liable for the purchase price unless she raised a defense. The

defense raised by her was that she was not liable for the purchase price because the items were fixtures and already belonged to her. Since the defendant raised such a defense, it was incumbent on her to prove it. We cannot say under the circumstances of this case that the court was compelled to find that the defendant had satisfied her burden of proof on this point and that these items were fixtures solely by reason of the physical attachment mentioned above. Moreover, the record is replete with indications that the parties themselves treated the items as chattels rather than as fixtures. These indications include the bill of sale to the plaintiff from his father, the chattel mortgage given by the plaintiff, the defendant's failure to include them in the lease to the plaintiff, and the recitation in a subsequent lease of the premises by the defendant to Chester and Mary Bickford that "[i]t is understood that the electric hot water heater and other fixtures in the dwelling are included in this lease, but that otherwise it is a bare farm without stock, machinery or equipment of any kind." Other significant indications of the understanding of the parties include the defendant's instructions to have the items bid in at the auction so that she could include them in the proposed lease to Gomez and the defendant's letter to the plaintiff's attorney, following the auction, acknowledging the plaintiff's ownership of the equipment and concluding "I do not claim it in any way, am not responsible for it and want it removed." Certainly, these are among the facts to be considered in determining "[w]hether a permanent accession to the freehold was intended." *Giuliano Construction Co.* v. *Simmons,* supra. The court correctly concluded that the items were not fixtures and that the plaintiff

had title to them and the right to sell them at the auction.

The second claim of the defendant is that Pipa was not her subagent and therefore had no authority to bind her to purchase the items for which he submitted the successful bids at the auction. This claim, in turn, hinges on the question of Riddell's authority to act for the defendant in retaining a subagent. The court found, and it is not questioned, that Riddell's position for some years prior to the auction had been that of a general manager of the defendant's affairs, including those pertaining to the farm, and that he had been held out by the defendant to the community in general, and to the plaintiff in particular, as her agent, duly authorized to act for her in all matters pertaining to the farm. Riddell, although present at the auction, preferred, for obvious reasons, not to do the actual bidding himself and requested Pipa to bid—which Pipa did in the presence of Riddell and under his direction.

The existence of an implied agency is essentially a question of fact. *Adams* v. *Herald Publishing Co.,* 82 Conn. 448, 451, 74 A. 755. The proof is generally found in the acts and conduct of the parties. *Alfred Fox Piano Co.* v. *Bennett,* 96 Conn. 448, 450, 114 A. 529. Actions of the defendant and Riddell clearly made it appear that Riddell had broad general authority to act in behalf of the defendant, especially in matters pertaining to the farm. A general agent for a disclosed or even partially disclosed principal subjects the principal to liability for acts done on his account which usually accompany or are incidental to transactions which the agent is authorized to conduct.

The consent and authority from the principal to his agent to employ a subagent may be given ex-

pressly or by implication. *Burwell* v. *Neumann,* 130 Conn. 117, 120, 32 A.2d 640; *Davis* v. *King,* 66 Conn. 465, 472, 34 A. 107. It may be inferred from an appointment to a position of general authority which, in view of business customs, ordinarily includes authority to appoint other agents. Restatement (Second), 1 Agency § 79. It also may be inferred where the business is of such a nature that it is impracticable for the agent to perform it in person. Id. § 80 (c). Here, certain practical considerations might logically be assumed to have induced Riddell to have someone else do the actual bidding for the defendant. The court correctly concluded from the facts found that Riddell, as general agent for the defendant, had authority to employ and did, in fact, employ Pipa as subagent and that the defendant was bound by Pipa's actions in bidding in the items of equipment.

The defendant's final claim concerns the failure of the court to find, as requested, that at the time of the auction Pipa "had no knowledge of the existence of the defendant." Instead, the court found that, at that time, Pipa "did not personally know the defendant." The finding was a proper one, although inconsequential.

There is no error.

In this opinion the other judges concurred.