## Merritt-Chapman and Scott Corporation *v.* Nicholas Mauro et al.

House, C. J., Cotter, Loiselle, Bogdanski and Barber, Js.

*(Two judges dissenting)*

Argued February 11—decision released June 15, 1976

*Alan R. Spier,* with whom were *John H. Lawrence, Jr.,* and, on the brief, *Samuel Bailey, Jr.,* for the appellant (plaintiff).

*Victor P. Fasano,* for the appellee (named defendant).

LOISELLE, J.   The plaintiff, Merritt-Chapman & Scott Corporation, brought this action to determine its rights in and to bowling equipment located in a building formerly owned by the defendant Nicholas Mauro, who had mortgaged it to the plaintiff's predecessor-in-interest in 1964. The plaintiff claims that it acquired title to this bowling equipment by virtue of the strict foreclosure of the mortgage in 1968. Mauro claims that this equipment had been excluded from the mortgage, that it was personalty and that title remained in him after foreclosure. After a trial to the court, judgment was rendered in favor of Mauro on all issues. On appeal, the plaintiff challenges the court's conclusion that the bowling equipment was not a fixture and the court's ruling in admitting certain parol evidence offered to prove Mauro's intention to exempt the bowling equipment from the mortgage.

The findings of the trial court, as corrected, may be summarized as follows:  In 1960 or 1961, the defendant Nicholas Mauro purchased property known as the Enfield Plaza shopping center from its financially troubled owner, who had been unable to complete construction and who had rented only 60 percent of the center although the whole complex had been substantially completed. At that time the center included an unrented and unimproved area which Mauro unsuccessfully attempted to rent before he decided to turn it into a bowling alley. The unrented portion of the complex later occupied

by the bowling alleys had been completed to the extent that a concrete floor had been laid but no ceiling or air conditioning had been installed. This unfinished condition would enable the owner to install the kind of flooring, ceiling and lighting that would be desired by a prospective tenant.

Thereafter, on September 28, 1962, Mauro contracted by conditional bill of sale with the defendant Brunswick Corporation to purchase the bowling equipment, the title to which is in issue here. The conditional bill of sale stated that the bowling equipment and accessories were to be located at the shopping center and would not be altered, modified or removed without the written consent of Brunswick. The total purchase price of the equipment was $267,711.06, of which $245,760 was to be paid in sixty-four monthly installments of $3840 each, with 6 percent interest thereon. Despite these terms, the purchase price was not paid in full until February, 1971. At the time of the purchase Brunswick required the defendant Mauro to obtain a consent agreement from Society for Savings, the holder of a first mortgage on the Plaza property, which stipulated that the bowling equipment "shall at all times be considered personal property and not attached to the real estate on which they are installed." The conditional bill of sale was filed in the Enfield land records, along with a financing statement which listed the bowling equipment and stated that this equipment was "affixed or to be affixed to real property," i.e., the Enfield Plaza shopping center.

Prior to Brunswick's installation of the bowling equipment and accessories, the concrete floor in the vacant area in question had two levels, having a

difference of approximately two feet between them. Mauro built a crib to bring the lower level of the floor up to the height required to receive the alleys and pinsetting machines. This crib, which extended the length of the building, consisted of A-frames, which supported cross planks and cross braces. The A-frames were wedged into place so as to be incapable of movement.

Thereafter he constructed a concrete block platform across the entire rear portion of the building in the place the pinsetters were to be located. This concrete block platform was topped by a one-and-one-half-inch cap of concrete slabs around the top of the concrete blocks. Mauro also installed a raised wooden platform, along with an area to collect pin balls, a ball rack, some paneling and an iron railing, all of which were removable, as were tables bolted onto the platform. These items could be removed after the removal of all the bowling and restaurant furnishings and equipment, except for the toilet facilities and air conditioning and heating equipment, so that the premises would be in the same condition as before installation. Finally, he suspended a ceiling specially designed to absorb the noise from the alleys.

Upon completion of these preparations, Brunswick installed sixteen bowling lanes, pinsetters and related accessories. Each lane was screwed into the underlying crib by means of one hundred screws, and each pinsetter was bolted to the underlying cinder block and concrete platform. In addition, eight one-inch holes were drilled through the floor in order to run ducts which would receive all wires running between the pinsetting machines and other parts of the facility.

An adjacent restaurant area was also installed, for which a dozen holes to bring up water or to serve as drains were drilled, all counter stools were bolted to the concrete floor and other restaurant equipment was installed.

The bowling lanes may be removed by cutting them in two places, carrying them out in three sections on edge through a door and placing them on a flatbed trailer. Similarly, pinsetters may be disassembled, taken out through a regular doorway and loaded onto trucks. Removal of all of the lanes would take a ten-man crew ten days, and reinstallation would require eighty-five man-hours per lane.

The bowling equipment and restaurant area were completed and opened for business by the end of 1962; they were operated by or under Mauro until 1966, when they were rented to a tenant.

In July or August of 1964, Mauro applied for a loan of one million dollars from the Industrial Finance Corporation, the plaintiff's predecessor-in-interest. That loan was consummated in August, 1964, within two weeks of receipt of Mauro's application, and was secured by a mortgage on ten commercial properties, including the Enfield Plaza shopping center. This mortgage was a second mortgage as the commercial properties, which had a total value of ten million dollars, were subject to existing mortgages totaling four million dollars.

The plaintiff's mortgage included a "fixture clause" following the description of the ten mortgaged properties which stated that the mortgage was to include "insofar as the same are, or can by agreement of the parties be made, a part of the realty, all structures, fixtures and appliances now or hereafter on the described premises, or used therewith."

Two years later, on or about August 18, 1966, Industrial Finance Corporation began legal proceedings to foreclose this mortgage; judgment was rendered in its favor, and on August 12, 1968, absolute title to these ten properties vested in Industrial Finance Corporation. Subsequently, all rights of Industrial Finance Corporation were merged into the plaintiff, Merritt-Chapman & Scott Corporation. The present action followed and resulted in the judgment for Mauro.

The plaintiff claims that the trial court erred as a matter of law in concluding that the bowling equipment was not covered under the fixture clause of the 1964 mortgage but was instead personalty, title to which remained in Mauro.

"[I]t is essential to constitute a fixture that an article should not only be annexed to the freehold, but that it should clearly appear from an inspection of the property itself, taking into consideration the character of the annexation, the nature and the adaptation of the article annexed to the uses and purposes to which that part of the building was appropriated at the time the annexation was made, and the relation of the party making it to the property in question, that a permanent accession to the freehold was intended to be made by the annexation of the article." *Capen* v. *Peckham,* 35 Conn. 88, 94; *Stone* v. *Rosenfield,* 141 Conn. 188, 192, 104 A.2d 545. The intention of the parties, objectively manifested as of the date when the personalty was attached to the freehold, is the primary or essential test for determining whether an object has become a fixture. *Cleaveland* v. *Gabriel,* 149 Conn. 388, 391, 180 A.2d 749; *Giuliano Construction Co.* v. *Simmons,* 147 Conn. 441, 443, 162 A.2d 511; *Camp*

v. *Charles Thatcher Co.,* 75 Conn. 165, 170, 52 A.
953; 35 Am. Jur. 2d, Fixtures, § 14; 36A C.J.S.,
Fixtures, § 2; see cases in annot., 77 A.L.R. 1400.

In *Lesser* v. *Bridgeport-City Trust Co.,* 124 Conn.
59, 198 A. 252, an action against a mortgagee who
had foreclosed a mortgage secured by land and a
building specially adapted for bowling alleys,[1] the
court stated the general rule (p. 64): "There is
a strong tendency as between mortgagor and mort-
gagee to hold that such articles are a part of the
realty whereas, in the case of landlord and tenant
or other holder of a limited term, the tendency is
the other way. The reason for this rule is that the
owner of the equity is presumed to make improve-
ments for the permanent benefit of the property,
while a mere tenant is more likely to make them
for his personal convenience." The court also said
that especial stress should be given to whether a
building was specially adapted to certain uses. If
so adapted, then "the instrumentalities to carry

[1] In *Lesser* v. *Bridgeport-City Trust Co.,* 124 Conn. 59, 61–63,
198 A. 252, a construction mortgage had been obtained for the erec-
tion of a building. The application for the loan associated with
the mortgage stated that the building would house two stores and
bowling alleys. Plans showing the construction for those purposes
were submitted to the defendant-first mortgagee with the applica-
tion. A second mortgage was given to the plaintiff. Twelve bowling
alleys and equipment were purchased on a conditional bill of sale
and installed. The original owners transferred the property to a
corporation and the alleys as personal property under the bill of
sale were transferred to the corporation with the consent of the
vendor of the alleys. The corporation paid the vendor in full, but
incurred indebtedness to the West Side Bank and transferred its
interest in the alleys to the bank. The plaintiff foreclosed his second
mortgage, conveyed the premises to the Hancock Corporation, and
was given back a second mortgage. In this mortgage there was an
express agreement that the alleys, pins and balls were to be part of
the mortgaged premises. When the first mortgage was foreclosed,
the plaintiff surrendered the keys to the defendant. Later the plain-
tiff brought an action for conversion.

out those purposes are ordinarily considered a part of the realty." Ibid. Further, in that case, the court considered whether the postannexation acts of the owners and operators confirmed an intention, at the time of annexation, to make the alleys a part of the realty. All facts found, with one exception, fulfilled every condition from which an intention would be presumed to make the personal property— the bowling alleys—a part of the realty. The exception was a conditional sale contract under which the original owners bought the alleys and equipment. Under the contract the alleys, as between vendor and vendee, were to be considered as personal property. In that case the vendor's security interest arising under the contract had been extinguished by the payment of the debt prior to the foreclosure and the "situation [was] the same as if no conditional bill of sale had been given." Id., 65. The court concluded that, under all the facts, the alleys, as a matter of law,[2] were fixtures.

In the present action, the alleys were installed by the owner, thereby creating a presumption that he intended the alleys to be for the permanent benefit of the property. The bowling equipment was also bulky and considerable effort would be required to remove it from the building. Any other building would have to be specially prepared to use the equipment. See *Capen* v. *Peckham,* supra.

On the other hand, other facts found by the court suggest an intention that the bowling equipment was to remain personalty. Mauro bought a shop-

___

[2] At the trial, a verdict was directed for the defendant, assignee of the original mortgagee, on the issue of whether the bowling alleys were fixtures. The plaintiff appealed from the judgment rendered on the verdict, assigning error in the refusal of the trial court to set aside the verdict.

ping center that was in financial trouble and that had a vacant, unleased area. He was unable to find a tenant for the unleased area. He then decided to put bowling alleys in the vacant area. The purchase contract for the alleys specifically provided that the alleys remain personalty. The first mortgagee also agreed to this provision so that, at the time of installation, all parties having an interest in the shopping center, the first mortgagee, the owner of the equity of redemption, and the vendor of the equipment, recognized that the alleys were personalty. It is true, as stated in *Lesser* v. *Bridgeport-City Trust Co.,* supra, that an article may retain its chattel character between a vendor and vendee but remain real property as between a mortgagor and mortgagee. Such evidence, however, although not conclusive, may be considered with other evidence presented, especially when at the time of foreclosure by the mortgagee, the vendor's security interest had not been extinguished by the payment of the debt. The alleys could not have been deemed to be realty as to all concerned. See *Cleaveland* v. *Gabriel,* 149 Conn. 388, 393, 180 A.2d 749.

Contrary to the situation in *Lesser* in which the court placed "especial stress" on the fact that the building was specially adapted to bowling alleys, the building in this case, as constructed, was not adapted to bowling alleys, but the alleys were installed in a vacant area in a shopping center already built and adapted to produce rental income from any source.[3]

---

[3] In *Webb* v. *New Haven Theatre Co.,* 87 Conn. 129, 133, 87 A. 274, the court found that one of the important factors tending to show an intent to annex permanently was that the removal of the installed articles would render the building practically useless for the purpose for which it was constructed and used.

Furthermore, acts subsequent to the installation of the alleys tend to confirm an intent that the alleys were to remain personalty. When the alleys were rented to a tenant, the rental was split, that is, rent was specifically charged for the space in the premises and rent was specifically charged for the use of the alleys. This arrangement continued after the foreclosure of the plaintiff's mortgage on August 12, 1968. After that date, the tenant only paid the plaintiff as owner of the premises for the use of the space. As the vendor of the alleys was not fully paid at the time of the foreclosure of the plaintiff's mortgage in August, 1968, Mauro continued to pay the vendor for the alleys after the foreclosure until they were paid in full in February, 1971. Mauro, or his tenants, paid the taxes, assessments and insurance premiums for the alleys as personalty before the foreclosure and, after the foreclosure, for the years 1969, 1970 and 1971. Furthermore, Mauro, after the foreclosure, spent from $25,000 to $28,000 for additional equipment on the alleys. All of these acts could be considered as confirming an intention that the bowling alley equipment placed in the vacant area of the shopping center was to remain personalty. *Cleaveland* v. *Gabriel,* supra; *Giuliano Construction Co.* v. *Simmons,* 147 Conn. 441, 443, 162 A.2d 511.

"A question of intent is a question of fact, the determination of which is not reviewable unless the conclusion drawn by the trier is one which cannot reasonably be reached." *International Brotherhood* v. *Commission on Civil Rights,* 140 Conn. 537, 543, 102 A.2d 366; *McDermott* v. *McDermott,* 97 Conn. 31, 35, 115 A. 638. It cannot be held that the court was in error in concluding upon all the evidence that the intention of Mauro, objectively mani-

fested as of the date when the bowling equipment was installed in the shopping center, and confirmed by later actions, was that such equipment remain personalty.

Because the court could properly find that the equipment was not a fixture, the remaining assignments of error concerning the application of the parol evidence rule need not be considered. The substance of the contested evidence involved statements made by Mauro to the plaintiff at the time of the execution of the mortgage relative to the exclusion of the bowling alleys from the mortgage deed.

There is no error.

In this opinion HOUSE, C. J., and BOGDANSKI, J., concurred.

COTTER, J. (dissenting). I cannot agree that the bowling equipment is personalty. Under the weight of the authorities cited below, the equipment constitutes fixtures as a matter of law, and thus it is covered under the fixture clause of the 1964 mortgage. Furthermore, parol evidence to the contrary is inadmissible, and title thus passed to Merritt-Chapman upon foreclosure.

I

Turning first to the issue of whether the equipment constitutes personalty or fixtures, the majority correctly acknowledges that it is the intention of the parties, objectively manifested as of the date when the personalty is attached to the freehold, which is the primary or essential test for determin-

ing whether an object has become a fixture.[1]  However, this test is not properly applied to the instant facts.

To my mind, the case of *Lesser* v. *Bridgeport-City Trust Co.*, 124 Conn. 59, 198 A. 252, is controlling, inasmuch as it is identical to the present case in all material respects, and the bowling equipment was there held to constitute fixtures as a matter of law.

*Lesser* states the operative test for determining objective intention that property become a fixture as follows:  "[I]t is essential to constitute a fixture that an article should not only be annexed to the freehold, but that it should clearly appear from an inspection of the property itself, taking into consideration the character of the annexation, the nature and the adaptation of the article annexed to the uses and purposes to which that part of the building was appropriated at the time the annexation was made, and the relation of the party making it to the property in question, that a permanent accession to the freehold was intended to be made by the annexation of the article."  Id., pp. 63–64, quoting *Capen* v. *Peckham,* 35 Conn. 88, 94; cf. *Stone* v. *Rosenfield,* 141 Conn. 188, 192, 104 A.2d 545.

Factors to be considered in determining objective intention are whether the articles are "ponderous and exceedingly difficult" to remove, are "of considerable value taken in connection with the building

---

[1] *Nelse Mortensen & Co.* v. *Treadwell,* 217 F.2d 325 (9th Cir.); *In re Theodore A. Kochs Co.,* 120 F.2d 603 (7th Cir.); *Giuliano Construction Co.* v. *Simmons,* 147 Conn. 441, 443, 162 A.2d 511; *Camp* v *Charles Thatcher Co.,* 75 Conn. 165, 170, 52 A. 953; *Bay State York Co.* v. *Marvix, Inc.,* 331 Mass. 407, 119 N.E.2d 727; *Hanson* v. *Ryan,* 185 Wis. 566, 201 N.W. 749; 35 Am. Jur. 2d, Fixtures, § 14; 36A C.J.S., Fixtures, § 2.

and of little value as chattels to be removed," and have "been fitted to the places they occupied and would not be suited to any other places or building unless specially prepared for them." *Capen* v. *Peckham,* supra, 96.

Plainly, these factors are evidenced by the sheer size of the annexation and the adaptation of sixteen bowling alleys, pinsetters and accessories. The findings thus clearly support the conclusion of an objective intention to permanently affix the equipment at the time of its installation, and there is nothing to rebut the presumption that "the owner of the equity . . . make[s] improvements for the permanent benefit of the property, while a mere tenant is more likely to make them for his personal convenience." *Lesser* v. *Bridgeport-City Trust Co.,* supra, 64.

Specifically, there is Mauro's purchase of $267,711 of equipment for which he was personally liable; his adaptation at his own expense of the special foundation and concrete supports; damage to the lanes, which, if removed, "are cut into . . . sections, in two places and removable in three sections and carried out on edge through" a door opening and placed on a flatbed; abandonment of the crib upon removal; and Mauro's contract with Brunswick, which forbade alteration or removal of the bowling equipment until the purchase price was paid. The contract provided for monthly payments over a 64-month span, and, in fact, payment was not completed until 1971, nine years after installation. These facts lead to but one conclusion, viz., that the bowling alleys were fixtures at the time of the plaintiff's foreclosure. See *Lesser* v. *Bridgeport-City Trust Co.,* supra, 66.

The majority opinion elides over these specific facts which were present at the time of installation and bases its conclusion that the equipment was personalty upon several legal and factual considerations which I do not believe are controlling or germane in the instant case.

Emphasis is laid upon the conditional bill of sale between Mauro and Brunswick, which provided that the bowling equipment would remain personalty as between them until the purchase price was fully paid. This fact is of no significance in the present case because such a conditional bill of sale existed in *Lesser* v. *Bridgeport-City Trust Co.,* supra, and the bowling alleys were still held to be fixtures as between mortgagor and mortgagee. "[T]he same property may be real as between the mortgagor [Mauro] and mortgagee [Merritt-Chapman] and personal as between the mortgagor [Mauro] and vendor [Brunswick]." Id., 65. "Conceding that the article annexed retains its chattel character by reason of the agreement, it loses such character as soon as the separate interest of the beneficiary under the agreement is extinguished." Ibid.

The majority opinion relies heavily on the only material factual difference between *Lesser* and the instant case, i.e., the building in *Lesser* had a preset foundation specially adapted for bowling alleys, while Mauro's building did not. This distinction is not determinative, however, because a "building converted and adapted to a specific purpose occupies the same status as a building erected for a like purpose." *Danville Holding Corporation* v. *Clement,* 178 Va. 223, 236, 16 S.E.2d 345; see 36A C.J.S., Fixtures, § 3 (c).

It is true that *Lesser* and the cases cited therein placed "especial stress" on the fact of a build-

ing's adaptation for a particular use; *Lesser* v. *Bridgeport-City Trust Co.,* supra, 64; as the majority opinion notes, and the presence of such a building would certainly facilitate a finding that articles such as bowling alleys which are placed in it are fixtures. When a building is not specially constructed, however, the analysis does not change, and an article is still a fixture if it meets the requisite tests set forth in *Lesser, Capen* v. *Peckham* and the other pertinent authorities, which the bowling equipment certainly does in the instant case.

Nor am I persuaded by the majority opinion's catalogue of facts pertaining to the conduct of Mauro and his tenant after the premises were leased in 1966, or four years after installation of the bowling equipment. The opinion explains its reliance on these indicia by citing language in cases which speak of acts subsequent to installation which "confirm an intention" of the annexor. The facts listed, however, are not particularly useful one way or the other in determining Mauro's objective intention at the time of installation some four years earlier.

The analysis distorts the true meaning of the test set forth in *Capen* v. *Peckham, Lesser,* and subsequent cases. Subsequent intention of the annexor, as manifested four years after installation, may buttress an already firm conclusion as to objective intention which rests on factors present at the time of installation. Subjective intention after installation cannot, however, serve as an essential element in forming that conclusion, yet this is what the majority opinion seeks to do here. The intent sought is not the subjective intent or undisclosed purpose of the annexor, but the intent manifested

by his actions at the time of installation. *Giuliano Construction Co.* v. *Simmons,* 147 Conn. 441, 443, 162 A.2d 511; *Radican* v. *Hughes,* 86 Conn. 536, 542, 86 A. 220; accord, 2 Tiffany, Real Property (3d Ed.) § 608. Whatever intention Mauro may have secretly harbored at the time of installation, his actions at that time speak clearly for him and disclose an objective intention that the bowling equipment constitute fixtures. An arcane, unexpressed intention does not meet the test of our authorities.

Finally, the fact that the equipment can be removed without damage to the freehold is not determinative as to whether the equipment is personalty, since the bowling alleys in *Lesser* were also removable without damage to the building. See *Farmers' National Bank of Sussex* v. *Salmon,* 118 N.J. Eq. 241, 243, 178 A. 635; *Gottfried* v. *State,* 23 Misc. 2d 733, 759, 201 N.Y.S.2d 649; *Voorhees* v. *McGinnis,* 48 N.Y. 278.

For these reasons, then, it seems to me that the sixteen bowling alleys, sixteen pinsetters and accessories constituted fixtures as a matter of law and were thus a part of the realty at the time of the plaintiff's foreclosure, and that the trial court was in error in concluding to the contrary.

## II

Since I am of the opinion that the bowling equipment constituted fixtures, it is necessary to consider whether title passed to the plaintiff upon foreclosure by virtue of a clause in the mortgage which unambiguously included "all fixtures," or whether title remained in Mauro by dint of a purported oral agreement to exclude the bowling equipment from coverage under the fixture clause.

In rendering judgment for Mauro, the trial court considered and relied upon parol evidence that at the time the mortgage was executed, Mauro and the plaintiff's predecessor-in-interest orally agreed to exclude the bowling equipment from the ambit of the mortgage.

"It is, of course, fundamental that a written contract may not be varied by parol." *Jarvis* v. *Cunliffe*, 140 Conn. 297, 299, 99 A.2d 126, citing *Cohn* v. *Dunn*, 111 Conn. 342, 346, 149 A. 851. In the instant case, the mortgage clearly covers "all fixtures," a phrase which I believe includes the bowling equipment, and if the parol evidence is excluded, title to that equipment would pass to the plaintiff. If, however, the evidence is admitted, then the parties have reserved the bowling equipment from coverage under the fixture clause, and title would remain in Mauro. Plainly, then, the parol evidence contradicts the plain meaning of the written mortgage and should have been excluded. *In re Theodore A. Kochs Co.*, 120 F.2d 603, 606 (7th Cir.).

The factual circumstances presented here are far from unique, and there are many cases in which a mortgage has been foreclosed and a mortgagor seeks to introduce evidence that fixtures had been excluded from the foreclosed mortgage by oral agreement. All such efforts have been steadily rebuffed, however, and the parol evidence has been excluded. Annot., 29 A.L.R.3d 1441; see, e.g., *Beebe* v. *Pioneer Bank & Trust Co.*, 34 Idaho 385, 390, 201 P. 717.

Illustrative is *In re Theodore A. Kochs Co.*, supra, where, as in the present case, the mortgagor argued that the plant machinery and equipment were not fixtures and, in the alternative, that if they were

fixtures, they were excluded from the fixture clause because of an oral agreement to that effect. After finding that the plant machinery and equipment were fixtures, the court rejected the parol evidence, stating (p. 606): "The mortgagor of industrial property has it within his means to exclude any portion of his property from the operation of the mortgage. In the instant case the owner of the factory might have limited the scope of the mortgage to the factory stripped of its plant machinery, but instead it provided expressly that the mortgage was to cover the realty and the fixtures. . . . It is too plain for words that (1) the law treats the disputed items as fixtures and that (2) the property fits the legal description in the mortgage." See also *Wolff* v. *Sampson,* 123 Ga. 400, 51 S.E. 335; *Zimmer* v. *Bellon,* 153 N.W.2d 757 (N.D.).

None of the circumstances in which parol evidence is normally admissible is present in the instant case. In the first place, parol evidence may be admitted to aid the court in explaining an ambiguity which appears in the instrument. *W. G. Maltby, Inc.* v. *Associated Realty Co.,* 114 Conn. 283, 289, 158 A. 548. Plainly, the fixture clause in the instant case is not ambiguous and means that any chattel which is a fixture is included. See *In re Theodore A. Kochs Co.,* supra; *Beebe* v. *Pioneer Bank & Trust Co.,* supra.

Secondly, parol evidence may be admitted to prove a collateral oral agreement which does not vary the terms of the writing. *Harris* v. *Clinton,* 142 *Conn.* 204, 210, 112 A.2d 885; *New Haven Tile & Floor Covering Co.* v. *Roman,* 137 Conn. 462, 464, 78 A.2d 336. However, in order for a parol agreement to be collateral to a written agreement, the governing question is "whether or not the particular

element of the alleged extrinsic negotiation is dealt with at all in the writing." 4 Williston, Contracts (3d Ed. Jaeger) § 639, p. 1049, quoting 9 Wigmore, Evidence (3d Ed.) § 2430, p. 99. In the instant case, both the mortgage and the oral exception deal with fixtures; thus the parol evidence is clearly not admissible as evidencing a collateral agreement. *Shelton Yacht & Cabana Club, Inc.* v. *Suto,* 150 Conn. 251, 258, 188 A.2d 493.

Thirdly, parol evidence is admissible to add a missing term in a writing which indicates on its face that it does not set forth the full and complete agreement of the parties. See, e.g., *Cone* v. *Pedersen,* 131 Conn. 374, 378, 40 A.2d 274 (missing description in a deed); also *Cohen* v. *Holloways', Inc.,* 158 Conn. 395, 260 A.2d 573; *Kinney* v. *Whiton,* 44 Conn. 262, 267–68 (consideration not fully recited in an agreement). Since the mortgage in the present case is clear and complete on its face, there is no ground for adding an additional reservation pertaining to the bowling equipment here in issue.

Finally, parol evidence can be introduced to show mistake or fraud; *Calamita* v. *DePonte,* 122 Conn. 20, 26, 187 A. 129; *Noble* v. *Comstock,* 3 Conn. 295, 299; to show a condition precedent; *Douglas* v. *Nowakowski,* 141 Conn. 438, 440, 106 A.2d 468; to prove a new contract; *West Haven Water Co.* v. *Redfield,* 58 Conn. 39, 41, 18 A. 978; or to prove subsequent oral modification based on new consideration; *Baier* v. *Smith,* 120 Conn. 568, 571, 181 A. 618. None of those circumstances has been alleged or proved in the present case, and thus it was error to have admitted the parol evidence.

Mauro argues that the trial court was correct in its ruling that the parol evidence was admissible

"not for the purpose of indicating the intention of the annexor at the time of installation of the equipment, but for the purpose of confirming the intention of the parties thereof." The intention of the parties, however, is not what one of them may have secretly entertained but rather what the language of the instrument says. *Foley* v. *Foley,* 149 Conn. 469, 471, 181 A.2d 607. In other words, the relevant question is: "[W]hat has the party expressed by his words?" not "What has he intended to express?" *Hotchkiss* v. *Higgins,* 52 Conn. 205, 213. To admit parol evidence because a party says he intended a writing to have a different meaning would totally vitiate the parol evidence rule.

"[I]ntention must be ascertained from the language of the deed itself, construed in the light of the attendant circumstances. . . . An agreement resting in parol, contrary in its terms to the purport of the deed, cannot be said to be an attendant circumstance. Such circumstances are the facts that the deed refers to, or may probably have been intended to refer to, or which identify any person or thing mentioned in it. But if the instrument has one distinct meaning in reference to the circumstances of the case, it must be construed accordingly, and evidence to show that the author intended to express some other meaning is not admissible." *In re Perkins' Estate,* 65 Vt. 313, 316–17, 26 A. 637; cf. *Perkins* v. *Corkey,* 147 Conn. 248, 252, 159 A.2d 166.

Plainly, this is precisely the situation in the instant case, inasmuch as the mortgage unambiguously covers "all fixtures." As a result, "it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their

undertaking, was reduced to writing. After this, to permit oral testimony, or prior or contemporaneous conversations, or circumstances, or usages, etc., in order to learn what was intended, or to contradict what is written, would be dangerous and unjust in the extreme." Holden & Daly, Connecticut Evidence, § 83, p. 292; see *Shelton Yacht & Cabana Club, Inc.* v. *Suto,* 150 Conn. 251, 255, 188 A.2d 493; see also *Cohn* v. *Dunn,* 111 Conn. 342, 346, 149 A. 851.

"The parol evidence rule is a rule of substantive law rather than a rule of evidence, and the essence of an objection under it is that even if the evidence objected to is admitted, it would be ineffective, and thus immaterial, because it could not legally affect the rights of the parties as defined in the writing." *Shelton Yacht & Cabana Club, Inc.* v. *Suto,* supra, 255, citing *Nagel* v. *Modern Investment Corporation,* 132 Conn. 698, 700, 46 A.2d 605. The intention of the parties, as evidenced by the legal import of the language of the mortgage, cannot under the circumstances be varied by parol evidence of a different intention.

I would find error, set aside the judgment and remand the case with direction to render judgment for the plaintiff quieting and settling the title in accordance with the relevant concluding portion of the form of judgment suggested in Form No. 512 of the Practice Book.

In this opinion BARBER, J., concurred.