[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The issue in this real estate tax appeal is whether the CT Page 9596 seats, video screens, and stage located at the Meadows Music Theater at 61 Savitt Way, Hartford, Connecticut, are items of personal property or part of the real estate for tax assessment purposes.
The construction of the theater was financed under a state bonding program which provided for the exemption of real estate taxes by the City of Hartford in exchange for the theater paying the City a percentage of its annual gross revenues. For this reason, it is beneficial to the plaintiff to classify the seats, video monitors and stage as part of the real estate. Conversely, it benefits the City to have these items classified as personal property.
The theater itself is an amphitheater with permanent seating for 6,700 people and seasonal lawn seating for about 18,300 people.
The seats in the theater consist of metal pods of two or three attached rigid metal chairs. Each chair is individually bolted to the theater's concrete floor. An electrical conduit runs through the end metal chairs of every other row to provide lighting for safety purposes. These electrical conduits run under the concrete floor to each alternate isle seat. In order to remove the seats, the concrete to which the seats are bolted must be broken up. The seats must be unbolted by machine. The bolts cannot be removed by hand. In order to replace seats, the concrete must be repaired. There are three to four hundred seats stored in a warehouse to replace the existing seats.
There are three large video monitors at the back of the theater to provide viewing for the audience on the lawn to the rear of the permanent theater structure. The audience, sitting on the lawn, cannot see the performance on stage without the video monitors. The three video monitors consist of projectors and screens that are placed in wood sleeves to guard against the weather. The sleeves containing the video monitors are connected to the theater by a system of cables and an electrical system.
The stage is a flat bed of four by eight foot panels sitting on a scaffold of steel cross pipes. The entire stage has a depth of eighty feet and a width of fifty feet. The stage will support close to 50,000 pounds. Individual panels can be removed and stored under the stage. The steel pipe support system for the stage is rigid and adjusted to the contours of the poured CT Page 9597 concrete floor on which it sits. The stage has never been removed from its location.
The plaintiff claims that the City improperly included the seats, video monitors and stage in the $997,500 personal property assessment against the plaintiff on the grand list of October 1, 1995 and thereafter. The plaintiff filed a two count complaint, claiming, in the first count, that the assessment of its property was excessive under General Statutes § 12-117a, and in the second count, that the property was illegally or wrongfully assessed as personal property rather than as part of the real estate under General Statutes § 12-119. At the trial, the parties agreed that the issue in this case is not one of valuation, but solely whether the subject property was properly categorized by the assessor as personal property rather than as real property.
We start our analysis by setting forth the legal principle in determining whether property is personalty or part of the real estate as a fixture.
The basic test in distinguishing between a fixture and personal property is what was the intention of the party making the annexation to the real estate at the time the property was attached. Waterbury Petroleum Products v. Canaan Oil and FuelCo., 193 Conn. 208, 215-16, 477 A.2d 988 (1984). This test is not subjective or an undisclose4 intent, but rather the objective intent manifested by the annexer at the time of the annexation. Id. When a building is specially adapted to certain uses, the instrumentalities to carry out those purposes are ordinarily considered part of the realty. Merritt-Chapman Scott Corp. v.Mauro, 171 Conn. 177, 1834, 368 A.2d 44 (1976).
With these principles in mind, we examine the seats, the video monitors and the stage. During the course of the trial, the court inspected the theater, including the seats, video monitors and stage.[1]
As previously noted, the seats were installed by bolting them to a concrete floor in such a manner that they could not be removed without causing damage to the real estate. The end seats of alternate rows were wired for light through conduits buried in the concrete floor. From n inspection of the theater it clearly appears, taking into consideration the character of the annexation of the seats and the intended use of the seats for the CT Page 9598 purpose of accommodating theatergoers, that a permanent accession to the real estate was intended when the seats were physically anchored into the concrete floor of the theater. SeeMerritt-Chapman Scott Corp. v. Mauro, supra, 171 Conn. 182.
In Rayl v. Shull Enterprises, Inc., 700 P.2d 567 (Idaho, 1984), the Supreme Court of Idaho concluded that an irrigation system on a farm was a fixture. The water pipes were bolted to cement slabs and attached to electrical wires which were buried underground. Although the Idaho court stated that constructive annexation may exist where the object comprises a necessary and integral part of the realty it found, as a matter of law, that the evidence was clear that the intention of the annexer was to make the system a part of the real estate. Id., 571. As in theRavl case, the present case involves a building built for a special purpose, that is as an amphitheater. Considering the purpose of the bolted down seats in the theater, ""[a]n object placed on the realty may become a fixture if it is a necessary or at least a useful adjunct to the realty, considering the purposes to which the latter is devoted.'" (Emphasis in original.) Id., 571, quoting Seatrain Terminals of California v. Conn of Alameda,83 Cal.App.3d 69, 147 Cal.Rptr. 578, 582 (1978). It is clear to us that the installation of the seats on the concrete floor of the amphitheater and the function the seats serve in carrying out the purpose for which the amphitheater was built lead to only one conclusion, that the seats are fixtures and part of the realty. The inventory, of seats kept separate for replacement of seats do not meet the above stated test for a fixture and remain personalty.
Turning to the issue of whether the three video monitors in the amphitheater are personalty or part of the realty, we have previously noted that the video monitors sit in a wooden sleeve attached to the realty only by cables and wires. Because a substantial portion of the amphitheater's seating is on the lawn to the rear of the theater, theatergoers would be unable to view the performance on the stage from that distance except for the monitors. Another factor when dealing with the video monitors is that the wooden sleeves were made specifically to hold the monitors. The wooden sleeves are fastened to the real estate. As we have previously noted, the purpose for which an object is attached to real estate is important to show the annexer's intention. See Rayl v. Shull Enterprises, supra, 700 P.2d 571. In the present case, the theater could not fully operate without the monitors. As an example, the concert promoter testified that at CT Page 9599 the only performance in the history of the amphitheater in which the video monitors were turned off at the insistence of the performers, a riot ensued because the lawn patrons could not see the performance.
In the case of Marsh v. Bonn Furs, Inc., 551 P.2d 1053 (Or. 1976), the Supreme Court of Oregon considered the issue of whether movable cages on a mink farm were fixtures. The movable cages fit in sheds on the farm. The sheds in Marsh were affixed to the realty for the purpose of holding the mink cages. In the present case, the sleeves were suitable only for the purpose of holding the video monitors. The court in Marsh stated: "`Where the element of suitability of the particular article to the use to which the realty is put is particularly strong the factor of physical annexation is liberally construed or even entirely dispensed with.'" Id., 1054, quoting Brown on Personal Property (3d ed. 1975) § 16.1, p. 520. Similarly, in the present case the monitors could be removed by detaching the sleeves from the cables and electrical lines but they have not been removed and their position and use are objective signs from which we conclude that the monitors are fixtures.
Our final consideration is that of the stage. The stage can be completely removed or it can be adjusted by adding or removing four by eight foot panels. Additional panels are stored under the stage. The stage has never been changed or removed since it was placed in use. The stage is critical to the operation of the theater. The massiveness of the stage and the purpose for which it was placed in use clearly indicate that the stage is a fixture and not personal property.
When we examine the test used in Waterbury Petroleum, supra, it is clear that annexation of the seats, monitors and stage was made with the intention that they be part of the realty and not personal property.
The City claims that the seats, video monitors and stage are trade fixtures and therefore remain personal property. There is no allegation in the pleadings that the plaintiff is a lessee rather than the owner of the property. In order for the issue of removal of trade fixtures to arise, we would have to find a landlord-tenant relationship and an intent not to make the fixtures a part of the realty. See Webb v. New Haven Theatre Co.,87 Conn. 129, 135, 87 A. 274 (1913). For the reasons previously given, we cannot so find. CT Page 9600
Accordingly, judgment may enter in favor of the plaintiff sustaining its appeal, without costs to either party. The assessor shall reclassify the seats, video monitors and stage as fixtures that are part of the real estate, beginning on the October 1, 1995 grand list.
Arnold W. Aronson Judge Trial Referee