**Daniel A. ZENOBI, Plaintiff,**

v.

**EXXON CO., U.S.A., Defendant.**

**Civ. A. No. H–81–105.**

United States District Court,
D. Connecticut.

Dec. 12, 1983.

Albert J. Barr, Richard Farrell, Abate, Fox & Farrell, Stamford, Conn., for plaintiff.

Paul M. O'Connor, Jr., Mark R. Carta, Whitman & Ransom, Stamford, Conn., for defendant.

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ZAMPANO, Senior District Judge.

This action for compensatory and punitive damages was commenced by the plaintiff Daniel A. Zenobi, an independent service station dealer doing business as "Allen Tire & Battery Service" in New Britain, Connecticut. Alleging that he was unlawfully overcharged for gasoline motor fuel purchased from the defendant Exxon Company, U.S.A. ("Exxon"), he bases his action on the Economic Stabilization Act of 1970 ("ESA"), as amended, 12 U.S.C. § 1904 (note); the Emergency Petroleum Allocation Act of 1973 ("EPAA") as amended, 15 U.S.C. § 751 *et seq.* and the regulations set out at 6 C.F.R. pt. 150 and 10 C.F.R. pts. 210 and 212.

## I. FACTS

The record discloses that the following facts are undisputed. Zenobi has been a dealer of Exxon's products, including the products of its predecessors, since 1947 at his service station located on Allen Street in New Britain, Connecticut. Over the years their business relationship was governed by a series of written agreements which specified the terms and conditions of supply and payment.

In early 1972, the parties commenced negotiations of a new five-year agreement,

which was executed on April 26, 1972. In addition to the written provisions set forth in the contract, Exxon's representative orally agreed to grant Zenobi a credit of one cent on each gallon of gasoline purchased per month. This rebate was known in the trade as a "month-end allowance" ("MEA"). These credits were duly issued to Zenobi each month for over a year.

On August 29, 1973, Exxon, through its field representative, advised Zenobi that the MEA rebates were being terminated. When asked for the reason, the representative merely replied: "That's the way it is." Although disappointed, Zenobi did not object to the discontinuance of the allowance either orally or in writing to Exxon, nor did he seek to have it reinstated. When a renewal of the written agreement between the parties was being negotiated in 1977, Zenobi did not request that a MEA allowance be granted by Exxon.

In February 1980, Zenobi received a newsletter from the Connecticut Gasoline Retailers Association which indicated, among other things, that it was improper for a petroleum supplier to discontinue MEA credits which were in existence during the year 1972. Subsequently, Zenobi consulted a lawyer and this suit was instituted on February 5, 1981.

The complaint, in effect, alleges that Exxon's refusal to pay Zenobi any MEAs after August 1973 was a violation of federal rules and regulations governing sales of petroleum products by refiners, which entitles Zenobi to compensatory and treble damages. Exxon now moves for summary judgment, contending that the plaintiff's claims are barred by applicable statutes of limitations. In response, Zenobi argues that federal equity principles and the existence of a fiduciary relationship between Zenobi and Exxon dictate a tolling of the statutes and that the fiduciary relationship raises triable factual issues.

## II. THE APPLICABLE STATUTE OF LIMITATIONS

■ Neither the EPAA nor Section 210 of the ESA contain a limitations provision. 12 U.S.C. § 1904 (note); 15 U.S.C. § 751 *et seq.* See, e.g., *Siegel Oil Co. v. Gulf Oil Corp.,* 701 F.2d 149, 151 (Em.App.1983); *Ashland Oil Co. of California v. Union Oil Co. of California,* 567 F.2d 984, 989 (Em.App.1977), cert. denied, 435 U.S. 994, 98 S.Ct. 1644, 56 L.Ed.2d 83 (1978); *Hyland v. Dennison Mfg. Co.,* 496 F.Supp. 939, 940 (D.Mass.1980). In this situation, the Court must apply the statute of limitations of Connecticut, the forum state, which best effectuates the policies underlying the federal statutes to determine if Zenobi's action is time-barred. See, e.g., *Board of Regents of the Univ. of the State of New York v. Tomanio,* 446 U.S. 478, 488, 100 S.Ct. 1790, 1797, 64 L.Ed.2d 440 (1980); *Leonhard v. United States,* 633 F.2d 599, 615 (2 Cir.1980), cert. denied, 451 U.S. 908, 101 S.Ct. 1975, 68 L.Ed.2d 295 (1981); *IIT, An International Investment Trust v. Cornfeld,* 619 F.2d 909, 928 (2 Cir.1980); *Stull v. Bayard,* 561 F.2d 429, 431 (2 Cir.1977), cert. denied, 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 783 (1978); *Kaiser v. Cahn,* 510 F.2d 282, 284 (2 Cir.1974).

■ The Connecticut statute of limitations most analogous to an action to recover compensatory damages under Section 210 of the ESA is Conn.Gen.Stat. § 52–577 which provides: "No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." See *Hyland,* 496 F.Supp. at 940 (finding Massachusetts' statute of limitations for torts most analogous to an action pursuant to Section 210 of the ESA). With respect to the punitive damages aspect of the case, the defendant contends that Connecticut's one-year statute of limitations applies. The Court, however, accepts, for the purposes of this motion, plaintiff's assertion that the three-year statute of limitations applies.

## III. ACCRUAL OF CAUSE OF ACTION

■ Ordinarily, in order to trigger the start of the limitations period, a cause of action is deemed to accrue on the date the

plaintiff could first have successfully commenced a suit based on that cause of action. See, e.g., *Santos v. District Council of New York*, 619 F.2d 963, 968–69 (2 Cir. 1980); *Chatham Brass Co., Inc. v. Honeywell Inc.*, 512 F.Supp. 108, 114 (S.D.N.Y. 1981); *United States v. Skidmore, Owings & Merrill*, 505 F.Supp. 1101, 1104 (S.D.N.Y.1981). This action, having been filed over seven years after Exxon terminated Zenobi's MEAs, is therefore facially time-barred.

■ In an attempt to avoid this threshold barrier to his action, Zenobi relies on the federal equitable tolling doctrine, which provides for the tolling of a statute of limitations if the existence of a cause of action has been fraudulently concealed. *Bailey v. Glover*, 88 U.S. (21 Wall.) 342, 348, 22 L.Ed. 636 (1874); *Long v. Abbott Mortgage Corp.*, 459 F.Supp. 108, 113 (D.Conn.1978). In this regard, once the defendant demonstrates that the limitations period has run, the burden shifts to the plaintiff to show "not merely that he failed to discover his cause of action prior to the running of the statute of limitations, but also that he exercised due diligence and that some affirmative act of fraudulent concealment frustrated discovery notwithstanding such diligence." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 461 (2 Cir.1974). See also *Campbell v. Upjohn Co.*, 676 F.2d 1122, 1126 (6 Cir.1982); *Stull*, 561 F.2d at 431; *Berry Petroleum Co. v. Adams & Peck*, 518 F.2d 402, 410 (2 Cir. 1975).

■ The fact of the termination of the MEAs was, of course, known to Zenobi in August 1973. At that time, and for three years thereafter, he could have maintained a suit against Exxon for the damages he suffered as a result of the alleged illegal discontinuance of the benefits. Instead, contrary to the allegations set forth in paragraph 7 of his complaint,[1] Zenobi testi-

fied under oath that he never complained to Exxon concerning the termination, that he did not request Exxon to reinstate the allowance, and that Exxon's field agent did not represent that the discontinuance of the credit was in full compliance with the law. Moreover, Zenobi failed to protect himself by seeking legal advice.

Zenobi's excuse that he was unaware of his legal rights until he received the Connecticut Gasoline Retailers Association's newsletter in 1980, is insufficient to delay the accrual date of his cause of action against Exxon. As stated in *United States v. Kubrick*, 444 U.S. 111, 122, 100 S.Ct. 352, 359, 62 L.Ed.2d 259 (1979):

> We are unconvinced that for statute of limitations purposes a plaintiff's ignorance of his legal rights and his ignorance of the fact of his injury or its cause should receive identical treatment. That he has been injured in fact may be unknown or unknowable until the injury manifests itself; and the facts about causation may be in the control of the putative defendant, unavailable to the plaintiff or at least very difficult to obtain. The prospect is not so bleak for a plaintiff in possession of the critical facts that he has been hurt and who has inflicted the injury. He is no longer at the mercy of the latter. There are others who can tell him if he has been wronged, and he need only ask.

See also *Vigman v. Community Nat'l Bank & Trust Co.*, 635 F.2d 455, 459 (5 Cir.1981) ("[t]he knowledge, whether actual or constructive, which an aggrieved party must have for the purpose of the commencing of the running of a statute of limitations is merely that of 'the *facts* forming the *basis* of his cause of action'") (emphasis in original); *Howard v. Sun Oil Co.*, 404 F.2d 596, 601 (5 Cir.1968), reh'g en banc denied (1969) ("ignorance of ... legal rights, or failure to seek legal advice, [does] not toll the statute of limitations").

---

1. Paragraph 7 of the complaint states:
   "At all times when the Plaintiff complained about the termination of his credit rebate arrangement with the Defendant, he was informed that it was company policy to discontinue the payment of such credit rebates or allowances, and that said discontinuance or withdrawal was in full compliance with all applicable government regulations and laws".

With respect to affirmative acts of fraudulent concealment, Zenobi sets forth no conduct on Exxon's part which supports the claim. Cf. *Grinnell*, 495 F.2d at 461 (plaintiff must show "that some affirmative act of fraudulent concealment frustrated discovery notwithstanding [plaintiff's] diligence"). The record is barren of any testimonial or documentary evidence which reveals, either expressly or inferentially, that Exxon made any legal or factual misrepresentation, or performed any act which could be construed to be an "affirmative concealment" of a fraud.

The legal contention advanced by Zenobi to sustain his position appears to be focused on the alleged "fiduciary relationship" between Exxon and himself. In effect he asserts that, even absent factors of due diligence and acts of concealment, Exxon owed him a fiduciary duty to act in good faith. The unilateral termination of the MEAs, he argues, constituted an act of bad faith which equitably tolled the limitations period.

The Court disagrees. If the Court were to adopt Zenobi's argument, one need only to apply the legal principle of fiduciary relationship to a factual "one sided" or "unfair" transaction to escape the impact of a statute of limitations. Such a rule, as pointed out in *Gee v. CBS, Inc.*, 471 F.Supp. 600, 629 (E.D.Pa.1979), aff'd mem., 612 F.2d 572 (3 Cir.1979), could be utilized to toll the limitations period indefinitely, a result which would be "startling indeed". The phrase " 'breach of fiduciary duty' is not talismanic, in the presence of which the statute of limitations withers away". *Id.* at 630.

■ A more sound approach is that the mere allegation of a fiduciary relationship is not in and of itself sufficient to avoid the defense of a statutory time bar. Rather, it is a "factor which a court should consider in determining whether a plaintiff has exercised due diligence." *Hupp v. Gray*, 500 F.2d 993, 997 (7 Cir.1974). See also *Azalea Meats, Inc. v. Muscat*, 386 F.2d 5, 9 (5 Cir.1967) ("[t]he presence of a fiduciary relationship ... bears heavily on the issue of due diligence").

■ Thus, although the alleged fiduciary relationship with Exxon may have lessened Zenobi's duty to inquire into the legality of the discontinuance of the MEAs by Exxon, it did not relieve him totally of an obligation to exercise due diligence. As pointed out hereinbefore, Exxon informed Zenobi in August 1973 that the year long practice of granting MEAs was terminated. At this point, Zenobi could easily have sought advice concerning a possible wrongdoing by Exxon. A competent lawyer was surely available to Zenobi to determine whether Exxon's action conformed to applicable federal or state laws and regulations. His failure to investigate his legal rights within the period of limitations constitutes a lack of due diligence which is not excused by the alleged fiduciary relationship between the parties. See *Kubrick*, 444 U.S. at 122–24, 100 S.Ct. at 359–60; *Hupp*, 500 F.2d at 997; *Turner v. Lundquist*, 377 F.2d 44, 48 (9 Cir.1967). As stated in *Small v. Signal LP Gas, Inc.*, 548 F.Supp. 46, 49 (E.D.Mo. 1982):

> Defendants' pricing habits intimately affected plaintiffs' business for an extended period of time. A minimal inquiry into the law which determined the allowable prices, or the public bodies governing such, would have netted plaintiffs an earlier appreciation and possibly exercise of their rights. Plaintiffs cannot suspend their duty of diligent inquiry by maintaining that they were victims of a fraudulent concealment.

■ The Court is aware that, as a general rule, questions relating to breach of a fiduciary relationship and fraudulent concealment raise triable issues of fact, precluding the grant of summary judgment. *Long v. Abbott Mortgage Corp.*, 424 F.Supp. 1095, 1099 (D.Conn.1976); see also *Heyman v. Commerce and Industry Insurance Co.*, 524 F.2d 1317, 1319 (2 Cir. 1975). However, this is an unusual case in which the factual record is complete on the claim of concealment, and in which Exxon concedes, for the purposes of the motion

for summary judgment, that a fiduciary relationship exists between the parties. Under these circumstances, resolution by way of a pretrial motion is proper. See, e.g., *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2 Cir.1980) ("[t]he litigant opposing summary judgment ... must bring to the district court's attention some affirmative indication that his version of relevant events is not fanciful"); *Donnelly v. Guion*, 467 F.2d 290, 294 (2 Cir.1972) (summary judgment appropriate when reasonable minds could not disagree). See also *Stull*, 561 F.2d 429 (grant of summary judgment affirmed in fraud action); *Hupp*, 500 F.2d 993 (motion to dismiss affirmed in case involving fiduciary relationship and fraudulent concealment); *Campbell v. Upjohn Company*, 498 F.Supp. 722 (1980), and cases cited at 729–30 (fraudulent concealment defense rejected in motion for summary judgment); *Gee*, 471 F.Supp. 600 (motions to dismiss and for summary judgment granted despite claims of fiduciary relationship and fraudulent concealment).

Accordingly, Exxon's motion for summary judgment is granted.