**DANMAR ASSOCIATES, et al.**

v.

**Donald J. PORTER, et al.**

**Civ. No. H–76–146 (PCD).**

United States District Court,
D. Connecticut.

May 21, 1984.

On Motion for Relief from Waiver of
Right to Trial by Jury
Oct. 3, 1984.

Alden C. Harrington, John Boyajian, Boyajian, Coleman & Harrington, Providence, R.I., for cross-claim plaintiff Sheldon Hart.

Richard Cirillo, William Koegel, Rogers & Wells, New York City, for outside directors E. Clayton Gengras, Ralph A. Hart, Eli Shapiro, Roger C. Wilkins.

RULING ON PENDING MOTIONS

DORSEY, District Judge.

All that remains in this action, originally brought nearly nine years ago as a securities fraud class action, are claims of misrepresentation or fraudulent inducement to contract and breach of contract alleged by cross-claimant, Sheldon Hart (Hart), against defendants E. Clayton Gengras (Gengras), Ralph A. Hart (R. Hart), Eli Shapiro (Shapiro), and Roger C. Wilkins (Wilkins).

Pending are:
A. Defendants' motion for summary judgment;
B. Hart's motion for appointment of a trustee/conservator and related relief;
C. Hart's motion to substitute and add defendants and related relief;
D. Hart's motion to amend the cross-complaint;
E. Various discovery motions, including defendants' motion for a protective order; a series of motions to compel filed by Hart; and a set of third-party witnesses' objections to deposition subpoenas closely related to defendants' motion for a protective order.

The motions will be treated *seriatim.*

FACTS

A. *Background*

This case was commenced on September 24, 1975, by plaintiffs who had purchased securities of National Telephone Company (the Company) between May 22, 1974, and July 10, 1974, and claimed to have sustained damages as a result of fraudulent misrepresentations and omissions which inflated and distorted the market for the Company's securities. Defendants included the Company's entire board of directors, its senior officers, its wholly-owned subsidiary, two banks in the Company's lending consortium, and the Company's independent auditor during the period in question.

Two months prior to the commencement of this action, on July 10, 1975, the Company filed for protection under Chapter XI of

the United States Bankruptcy Act. On April 9, 1976, the proceedings were changed by the bankruptcy court from a Chapter XI reorganization to a Chapter X proceeding and a trustee in bankruptcy was appointed. In July 1977, the trustee in bankruptcy commenced an action in this court sounding in a variety of common law tort theories against the Company's entire board of directors, certain senior officers, its independent auditor, and its outside attorneys. In May 1978, this court approved the trustee's final plan of reorganization, terminating the bankruptcy proceedings. In 1982, the trustee's action was settled as to all defendants except one, as to whom the case was voluntarily dismissed. With the court's approval, the trustee executed a general release on behalf of the estate of the bankrupt company and final judgment was entered. The release ran in favor of defendants here.

Meanwhile, this action proceeded parallel to the bankruptcy proceeding and the trustee's lawsuit. In January 1979, the Company's outside counsel was added as a defendant. In March 1979, Sheldon Hart, the president, treasurer, chief executive officer, chief accounting officer, chairman of the board of directors, and majority shareholder of the Company, from its formation in 1971 until approximately mid-1975, filed a counterclaim against the class plaintiffs and cross-claims against the Company's four outside directors, Gengras, R. Hart, Shapiro, and Wilkins, the Company's independent auditors, and its outside counsel. In 1981, this court approved a settlement of the class plaintiffs' allegations against all defendants to the class action except Hart. In November 1983, the court approved a stipulation for the dismissal of Hart's cross-claim against the Company's outside counsel. His cross-claim against the auditors appears to have been resolved.

After the foregoing scenario, Hart's cross-claim against the outside directors is thus the only matter that remains.

B. *The Cross-claim of Hart Against the Outside Directors*

As set forth in an amended cross-claim dated December 22, 1980, and filed March 12, 1981, the essence of Hart's claims against the outside directors are that they violated duties owed Hart and the Company, thereby causing the Company's eventual insolvency and bankruptcy and ensuing damage to Hart. For each count of his cross-claim, he seeks compensatory damages in the amount of $8.5 million, allegedly the market value of his stockholdings before they lost all value due to the Company's insolvency and eventual bankruptcy, and punitive damages in the amount of $25 million, plus interest and attorney's fees. Hart's theory or theories have had the nature of a "moving target," (Reply Memorandum in Support at 7) a fact partially explained, and not wholly excused, by Hart's successive representation by at least three separate counsel and a not inconsiderable stint as a *pro se* plaintiff.

Count I of the amended cross-claim sets forth, in fifty-seven paragraphs, Hart's allegations that the outside directors, acting in furtherance of their personal and their banks' several interests, conspired during the Company's period of financial crisis to cause its insolvency and eventual bankruptcy. A series of secret agreements, fraudulent misrepresentations, fraudulent inducements to act and to contract, and other purported machinations are alleged and characterized as violative of the outside directors' duties owed to the Company and to Hart as a fellow director, majority shareholder, and contracting party.

Count II, incorporating by reference all the allegations in Count I, is styled as a class-count, by which Hart purports to represent all stockholders of the Company as of May 20, 1975, except those purchasing stock on or after May 22, 1974, seeking damages for the loss of all value of their shareholdings as alleged in Count I. No certification of such a class was ever sought or obtained.

Count III, expanding upon Count I, alleges that the Voting Agreement Hart and the outside directors signed on June 12, 1975, was actually a voting trust. Hart alleges

that he signed this agreement under duress, that it only partially memorialized an earlier oral agreement regarding control and management of the Company, and that the defendants violated their duties and obligations under the agreement or agreements, causing damages including the loss of the market value of his stock, the loss of his good name, and the loss of his ability to vote his shares to prevent the same.

"Alternative Count III" treats the document as a voting agreement, alleging that it was entered into under duress, in bad faith by virtue of fraudulent inducements, and thereafter was breached, destroying the value of Hart's stock and preventing him from acting to avoid the same.

DISCUSSION

A. *The Summary Judgment Motion*

To grant a motion for summary judgment there can be no "genuine issue as to any material fact" and the moving party must be "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). *Schwabenbauer v. Board of Educ.*, 667 F.2d 305, 313 (2d Cir.1981). "The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute." *American Int'l Group, Inc. v. London American Int'l Corp.*, 664 F.2d 348, 351 (2d Cir.1981), quoting *Heyman v. Commerce & Indust. Ins. Co.*, 524 F.2d 1317, 1319–20 (2d Cir.1975). Moreover, there must be no controversy as to inferences which may be drawn from the facts of record. *Phoenix Savings & Loan, Inc. v. Aetna Cas. & Sur. Co.*, 381 F.2d 245, 249 (4th Cir.1967). In determining whether or not there is a genuine factual issue in the case, the court must "resolve all ambiguities and draw all reasonable inferences against the moving party." *Schwabenbauer*, 667 F.2d at 313; *see also United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam); *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980). However, one against whom summary judgment is sought cannot rely on factually unsubstantiated conclusory allegations to sustain a claim that questions of

fact exist. 6 Moore's Federal Practice, § 56.22[2] (2d ed. 1982). "Concrete particulars" are thus necessary to ward off summary judgment. *Securities & Exchange Comm'n v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir.1978), quoting *Dressler v. The MV Sandpiper*, 331 F.2d 130, 133 (2d Cir.1964). *See generally Donnelly v. Guion*, 467 F.2d 290, 291 (2d Cir.1972).

1. *The Narrowed Issues for Determination*

The outside directors have moved for summary judgment upon all claims in the amended cross-claim dated December 22, 1980. Their motion is based narrowly on Hart's pleadings and testimony and on documents either filed of record in this court or prepared by and on behalf of Hart. In so doing, defendants have sought to eliminate any factual disputes and to present the question of Hart's entitlement to relief as one of law. (Memorandum in Support at 9).

Hart has conceded (Opposition Memorandum at 2, n. 2) that he may not pursue allegations of breach of the outside directors' duties to the corporation. Such wrongs may only be redressed in a suit by or on behalf of the corporation, not in a stockholder's action in his own name, on his own behalf. 13 W. Fletcher, *Corporations*, § 5913 at 318–19 (1980). When a corporation comes under the protection of the bankruptcy court and a trustee is appointed, the trustee accedes to all of the corporation's putative rights and is vested with sole and exclusive authority to maintain actions to redress alleged injuries to the corporation and, through the corporation, to the shareholders. *Pepper v. Litton*, 308 U.S. 295, 307, 60 S.Ct. 238, 245, 84 L.Ed. 281 (1939). That the trustee has done and the claims of the Company have been resolved, as discussed above. The trustee's settlement and compromise, approved by the court, and the consequent judgment and release are binding upon the Company's shareholders, including the plaintiff Hart. *Pepper*, 308 U.S. 295, 60

S.Ct. 238, 84 L.Ed. 281. (*See* Opposition Memorandum in Response at 1–2).

Accordingly, and under the doctrine of *res judicata*, to the extent the cross-claim purports to assert, in Count I and Count II, claims for breach of the outside directors' duty to the corporation, summary judgment for defendants is granted.

As plaintiff, in his memorandum, has opted to pursue "Alternative Count III" (based on a voting agreement) rather than Count III (based on a voting trust), in the face of defendants' compelling argument (Memorandum in Support at 28–33) that the document labeled "voting agreement" cannot be construed under Connecticut law to be a voting trust, summary judgment as to Count III is granted.

The cross-claim which remains, essentially under the head of "Alternative Count III," alleges a "breach of a contractual obligation owed to the cross claimant individually and [a] fraudulent representation made to the cross claimant individually leading to his individual injury." (Opposition Memorandum at 2, n. 2). Some doubts exist as to the validity, legally and factually, of the remaining "individual" claims. Plaintiff at trial shall be prepared to establish at the threshold the authority for his claims.

### 2. *The Claim of Fraud*

Hart's fraud claim alleges

that the defendants' misrepresentations caused him [1] to retain them on the Board of Directors into the Spring of 1975 and ... [2] to enter into the agreement with them in late May and early June, 1975 which resulted in his loss of management control of the company.

(Opposition Memorandum in Response at 1–2). To the extent claim [1], regarding Hart's retention of the defendants on the Company's board of directors, is properly raised by or on behalf of the corporation, it is dismissed for the reasons set forth above.

The fraud alleged as claim [2] above is more particularly described by Hart as follows:

The key element to the fraud claim and the element which makes all other activities of the outside directors during the Winter and Spring of 1975 misrepresentations and fraudulent is the fact that the four outside directors agreed in November of 1974 to force the irrevocable winddown of National Telephone Company [to a service-only company] and did not communicate this fact to Hart. Hart became aware of this agreement in the Winter of 1978–1979—only a few months prior to filing his cross-claim—when the SEC records became available to him and [certain] memos ... were discovered. Had Hart known ... that the outside directors had agreed to the irrevocable winddown ... he would not have entered into an agreement ... giving them management control over the company in May and June of 1975.

*Id.* at 15–16. Hart affidavit at 9, 27–29.

Consistent with their general posture in relation to this motion, defendants concede, *arguendo*, the truth of Hart's well-pleaded facts, as further developed by his memoranda in opposition. Defendants contend that any colorable claim of fraud or fraudulent inducement to contract is barred by the applicable statute of limitations. The parties agree that the three-year general tort statute of Conn.Gen.Stat. § 52–577 applies to the fraud claim. At issue is the applicability of the tolling provisions of Conn.Gen.Stat. § 52–595, which provides as follows:

If any person, liable to an action by another, fraudulently conceals from him the existence of the cause of such action, such cause of action shall be deemed to accrue against such person when the person entitled to sue thereon first discovers its existence.

Defendants have catalogued at great length (*see* Memorandum in Support at 19–28) Hart's various activities prior to the three years next preceding March 1979 when the cross-claim was asserted in order to show that every allegation of wrongdoing in the cross-claim was expressly or

implicitly stated among Hart's numerous correspondence, pleadings in other actions, and appearances before the bankruptcy court and the Securities and Exchange Commission. Thus, defendants contend Hart knew or should be held to have known of his cause of action in fraud before the three years next preceding March 1979, so that the tolling statute must be deemed inapplicable and this action untimely filed.

■■ Connecticut's tolling statute, Conn.Gen.Stat. § 52–595, is more exacting than the federal equitable tolling doctrine, enunciated in *Bailey v. Glover*, 21 Wall. (88 U.S.) 342, 22 L.Ed. 636 (1874). *See, e.g., Long v. Abbott Morg. Corp.*, 424 F.Supp. 1095, 1098 (D.Conn.1976) (Newman, J.). Under Connecticut law, a plaintiff seeking to toll a statute of limitations on the basis of fraudulent concealment must show that defendant's conduct or representations were directed to the very point of inducing delay in the bringing of the lawsuit to a time which the defendant thereafter claims bars the action as not brought within the statute of limitations. *Lippitt v. Ashley*, 89 Conn. 451, 94 A. 995 (1915). The plaintiff must show concealment by the defendant of the plaintiff's cause of action with the fraudulent intent of inducing a delay in suing until the limitation period has expired. The plaintiff must have been ignorant of the existence of his right of action. The defendant must have intended, in his conduct, that the plaintiff be kept in ignorance. Absent a fiduciary relationship, the defendant must have been guilty of an affirmative act of concealment—of more than mere silence. *Zimmerer v. General Elec. Co.*, 126 F.Supp. 690 (D.Conn.1954) (Smith, C.J.). Under the federal equitable doctrine, on the other hand, the running of a limitation period is tolled "where the party injured by the fraud remains in ignorance of it without any fault or want of diligence or care on his part ... until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party." *Bailey*, 21 Wall (88 U.S.) at 348, 22 L.Ed. 636.

Where the plaintiff has alleged acts or representations constituting or potentially constituting fraudulent concealment, courts have been somewhat loath to deny plaintiff, at the summary judgment stage, benefit of Connecticut's tolling statute. *See, e.g., Zimmerer*, 126 F.Supp. at 693 (summary judgment granted, where plaintiff cited no specific acts or representations by defendants and in fact conceded there were none); *Long*, 424 F.Supp. at 1099 (summary judgment denied, as plaintiff's allegations of a fiduciary relationship and a continuing course of fraudulent concealment raised material issues of fact). *But see Zenobi v. Exxon Co.*, 577 F.Supp. 514 (D.Conn.1983) (Zampano, J.); *Taylor v. Mobil Oil Corp.*, Civil No. H–81–106 (D.Conn. May 5, 1984) (Zampano, J.) (both granting summary judgment on grounds of plaintiffs' inability to establish fraudulent concealment such as to toll the statute of limitations under the federal equitable tolling doctrine).

■ Were the fraud matter the only issue raised on this motion, the court might feel constrained to hold that on the record as developed in the nearly five years of the pendency of this action, Hart has not sufficiently alleged specific acts of concealment sufficient to take shelter under Connecticut's fraudulent concealment statute. However, in view of the necessary trial of the contract claim discussed below, prudence and judicial efficiency dictate the denial of the motion as to the fraud claim. To the extent Hart establishes and meets his substantial burden on the fraudulent concealment claim, supporting the same at trial with clear, precise, unequivocal, and strict proof, *Puro v. Henry*, 188 Conn. 301, 308, 449 A.2d 176 (1982), he can plausibly defeat the statute of limitations defense to his claim of fraudulent inducement to contract. At present, issues of material fact preclude a determination as to the applicability or inapplicability of the tolling provisions.

Thus, to the extent defendants seek summary judgment as to the fraud claim, as

presently constituted, on grounds of the statute of limitations, the motion is denied.

### 3. *The Contract Claim*

Hart's contract claim rests upon an essentially oral agreement he allegedly entered into with the outside directors in May and June of 1975. Such agreement is purportedly memorialized and evidenced in part by the voting agreement of June 12, 1975, and minutes of the board of directors' meeting of May 21, 1975. Hart alleges that in return for his promises to resign as the Company's chief executive officer and to give the defendants management control of the Company for a three-to-four month period, the defendants personally covenanted to insure (1) that the Company "would be provided with sufficient liquidity to enable it to conduct its operations" during that period; (2) that arrangements would be made such that "unsecured creditors and debenture holders would be paid in full;" and (3) that management control would be returned to Hart in September of 1975. (Hart Affidavit, ¶¶ 17, 26).

The outside directors' motion is based on: the parol evidence rule; indefiniteness; the statute of frauds; and the palpable lack of any breach. These arguments will be treated *seriatim.*

### a. *The Parol Evidence Rule*

■ The parol evidence rule requires, in the absence of fraud, duress, mutual mistake, or something of the kind, the exclusion of extrinsic evidence, oral or written, where the parties have reduced their agreement to an integrated writing. This does not preclude parol evidence from being introduced to prove the making of a contemporaneous contract which does not cover the same ground as the integrated writing, or one which might reasonably be expected to be embodied in a separate contract. 4 *Williston on Contracts* § 631 (3d ed. Jaeger). *See generally, Damora v. Christ-Janer,* 184 Conn. 109, 441 A.2d 61 (1981).

■ The rule does not preclude proof of a collateral oral agreement which does not vary or contradict the terms of the writing, *Harris v. Clinton,* 142 Conn. 204, 210, 112 A.2d 885 (1955); *Merritt-Chapman & Scott Corp. v. Mauro,* 171 Conn. 177, 368 A.2d 44 (1976); *Jay Realty, Inc. v. Ahearn Develop. Corp.,* 189 Conn. 52, 453 A.2d 771 (1983). "[I]n order for a parol agreement to be deemed collateral to a written agreement, the governing question is 'whether or not the particular element of the alleged extrinsic negotiation is dealt with at all in the writing.'" *Merritt-Chapman,* 171 Conn. at 194–95, 368 A.2d 44, quoting 4 *Williston* § 639 and 9 Wigmore, *Evidence* (3d ed.) § 2430. When only a portion of the agreement was intended to be reduced to writing, portions of an entire agreement not contained in the writing and all entirely distinct noncontemporaneous agreements may be proved by parol. *Cohn v. Dunn,* 111 Conn. 342, 149 A. 851 (1930).

■ The defendants would have the court hold that the parol evidence rule precludes Hart from attempting to show that the outside directors agreed to anything additional to or different from what is contained in the June 12, 1975, voting agreement, on grounds that the writing was an integration, i.e. intended as the final repository of any oral agreements and the parties' course of dealings. This, on the instant record, and in an·abundance of caution, the court is not prepared to do.

In the absence of a merger clause in the June 12, 1975, voting agreement, in view of the statements in Hart's opposing affidavit to the effect that the voting agreement was only a partial written reflection of a larger, essentially oral contract, and in view of the language of the voting agreement itself, the court is unable to determine at this point that the same was intended to be the final repository of the parties' understanding so as to merge into it all prior negotiations and agreements. Until the court can better gauge the parties' intentions and thus decide the question of integration, any determination as to the applicability of the parole evidence rule would be premature.

### b. *The Further Claims*

Defendants' claim that any contract Hart alleges beyond the June 12, 1975, voting agreement is too indefinite to be the subject of an action for damages is also premature, until such time as Hart has introduced with greater particularity his version of the terms of the contract or contracts he alleges.

■ The claim that the putative contract runs afoul of the Connecticut statute of frauds suretyship provision is unavailing. It requires a strained reading of the above-noted claimed covenants to convert them, without question, into a "special promise to answer for the debt, default or miscarriage of another," Conn.Gen.Stat. § 52–550(a)(2) as to require compliance with the suretyship provision of Connecticut's statute of frauds. The court does not so construe them.

On similar grounds, the outside directors seek summary judgment inasmuch as Hart's papers do not allege with particularity any breach of the covenants alleged. As with the indefiniteness claim, the court deems such a determination premature and denies the motion on this ground. As in his response to defendants' other arguments, the foundation of Hart's claims may be thin and in danger of crumbling, but it cannot be said to be wholly without substance.

Accordingly, to the extent the summary judgment motion is addressed to any claims other than those properly assertable by Hart individually for misrepresentation or fraudulent inducement to contract and breach of contract, it is granted. To the extent it is addressed to these two issues, it is denied.

### B. *Amended Motion for Appointment of Trustee/Conservator and Related Relief*

■ While acting *pro se*, plaintiff moved this court to appoint a trustee/conservator of the estate of the now-deceased defendant E. Clayton Gengras, who died in July 1983, to safeguard suffi-

cient assets of the estate to satisfy the unspecified contingent liability sued upon herein. Plaintiff contemplates vesting this individual with authority to determine whether Gengras made any transfers of assets with fraudulent intent or for inadequate consideration in the period since 1974, and to take control, manage and hold such assets in trust during the pendency of this action. Viewed within the meaning of Rule 64, Fed.R.Civ.P., which authorizes the granting of provisional remedies "available under the circumstances and in manner provided by the law of the state in which the district court is held, existing at the time the remedy is sought," this wide-ranging motion must be denied.

■ The court need not reach defendants' various substantive arguments, for the amended motion fails on procedural grounds. Under Conn.Gen.Stat. § 52–278c, a prejudgment remedy application must be substantially in the form set out in the statute and include, *inter alia*, an affidavit sworn to by the plaintiff or a competent affiant setting forth facts sufficient to show that there is probable cause that judgment will be rendered in favor of the plaintiff. Compliance with these requirements is a prerequisite to the issuance of a prejudgment remedy. Conn.Gen.Stat. § 52–278b.

While proof of probable cause as a condition of obtaining a prejudgment remedy is not as demanding as proof by a fair preponderance of the evidence, *Three S. Development Co. v. Santore*, 193 Conn. 174, 474 A.2d 795 (1984); *Ledgebrook Condominium Ass'n, Inc. v. Lusk Corp.*, 172 Conn. 577, 376 A.2d 60 (1977), the unsworn recitation of facts in plaintiff's memorandum do not enable the court to establish the amount of damages sought, *Essex Group, Inc. v. Ducci Elec. Co.*, 181 Conn. 524, 436 A.2d 16 (1980), nor establish probable cause that plaintiff will prevail, and thus precludes the granting of what is apparently a request for a prejudgment remedy.

The amended motion for appointment of a trustee/conservator is denied.

### C. *Motion to Substitute Party Defendants and Related Relief*

Also while acting *pro se,* plaintiff moved for the substitution of the executors of the estate of E. Clayton Gengras in place of the recently-deceased defendant, and for injunctive relief staying the distribution of any assets of the estate until this litigation is concluded. Additionally, plaintiff seeks to add as parties defendant some thirteen Gengras family members allegedly the recipients of fraudulent transfers during the nine-year period preceding the defendant's death, and to enjoin them from transferring or otherwise dealing with any assets received until the court has determined whether such assets were fraudulently transferred.

As to the would-be executor defendants, the motion to substitute must be denied for failure of service upon non-parties. Rules 4 and 25, Fed.R.Civ.P. Additionally Hart fails to show a probability of success on the merits, an immediate threat of irreparable harm, the absence of an adequate remedy at law, and a balance of equities and hardships decidedly tipped in his favor, *e.g., Buffalo Forge Co. v. Ampco-Pittsburgh Corp.,* 638 F.2d 568 (2d Cir. 1981), so as to warrant his requested injunctive relief. Lastly, his requested injunctive relief cannot be granted, as it is an unauthorized intrusion on the jurisdiction of the probate court over the Gengras estate. *Giardina v. Fontana,* 733 F.2d 1047 (2d Cir.1984). The motion for injunctive relief against the would-be executor-defendants is denied.

Similarly, in the absence of sufficient factual and jurisdictional allegations as against the would-be family defendants, the Rule 15, Fed.R.Civ.P., motion to add parties implicit in the instant motion is denied without prejudice, as is the request for injunctive relief directed against them.

### D. *Motion to Amend Cross-Complaint*

Plaintiff, while acting *pro se,* moved under Rule 15, Fed.R.Civ.P., for leave to add four paragraphs to Alternative Count III of his amended cross-claim dated December 22, 1980. The paragraphs proposed relate to an oral agreement purportedly entered into on or after May 21, 1975, which has become central to plaintiff's action as presently constituted.

The proposed amendment is said to add no new facts to the allegations already in the complaint, but rather characterizes facts already alleged. Defendants properly note that under federal procedure it is not the function of pleadings to characterize facts, *e.g., Amader v. Johns-Manville Corp.,* 514 F.Supp. 1031, 1033 (E.D.Pa. 1981). Yet given the narrowing of this originally far-reaching, multifaceted action premised on multiple legal theories to its present contract and related fraud claims, a semblance of coherence and clarity and of compliance with Rule 9(b), Fed.R.Civ.P., warrant the court's exercising its Rule 15 discretion to grant leave to amend. Defendants' contention that the proposed amendment is dilatory and untimely warrants no contrary ruling, in the absence of any showing or assertion of prejudice or delay. The court intends no delay in proceeding to trial. The further argument that the proposed amendment asserts claims barred by pertinent statutes of limitations is also without merit in view of the foregoing discussion on defendants' motion for summary judgment.

Accordingly, the motion to amend is granted.

### E. *Various Discovery Motions*

A flurry of discovery motions followed the issuance of this court's orders designed to expedite the trial preparation process, particularly the September 27, 1983, scheduling order requiring all motions, pleadings, and discovery to be filed on or before October 14, 1983.

The outside directors have moved—on grounds of untimeliness, irrelevance, overbreadth, and harassment—under Rule 26(c), Fed.R.Civ.P., for a court order that the dozen discovery requests filed by Hart in the days preceding October 14, 1983, not be had. The motion is denied.

Hart's requests involve supplemental requests for admissions directed to two of the defendants, requests for production directed to all four defendants, notices of depositions served on three banks and an insurance company as to which the defendants are alleged to have had conflicts of interest, and a request by Hart for exceptions to the court's scheduling order.

The untimeliness claim is without merit. The requests were filed prior to the cut-off date in the September 27, 1983, order.

Defendants' blanket objections of irrelevance and immateriality are insufficient to preclude the discovery requested. Information not reasonably calculated to lead to the discovery of evidence admissible at trial on the issues as narrowed in and by the resolution of the summary judgment motion discussed above need not be provided. Compliance shall then be deemed to be restricted to discovery reasonably calculated to obtain evidence relevant to the remaining claims of fraud and breach of contract. Counsel shall be obliged to resolve disputes as to the proper scope of discovery and seek judicial intervention only after a good faith effort to resolve any differences has been exhausted. Sanctions under Rule 37(b), Fed.R.Civ.P., will be invoked by the court if necessary to resolve disputes. *See Roadway Express, Inc. v. Piper,* 447 U.S. 752, 763–64, 100 S.Ct. 2455, 2462–63, 65 L.Ed.2d 488 (1980); *National Hockey League v. Metropolitan Hockey Club,* 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976) (per curiam); *Link v. Wabash R. Co.,* 370 U.S. 626, 633–34, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962). The court will not now rule on the broad objections made, leaving counsel to narrow the resistance to truly objectionable specific requests as may appear justified after consultation among themselves.

The defendants' motion for a protective order is accordingly denied, without costs, as are the various objections and motions to quash of the would-be deponent banks. Hart's "Request for Specific Exceptions to Court Order" is granted as in conformity with the court's contemplation in issuing the scheduling order, except as to paragraphs four and six, as to which it is denied.

Hart's various motions to compel responses to admissions on the part of defendants Shapiro, R. Hart, and Wilkins are denied, without prejudice, for failure to comply with the local rules requiring both a certification of the parties' good faith efforts to resolve discovery disputes before judicial intervention is sought and a verbatim listing of the items of discovery involved, Rules 9(d)4 and 9(d)5, Local Rules of Court for the District of Connecticut.

### F. *Miscellaneous*

The scheduling order of September 27, 1983, shall remain in effect, so as to preclude the filing of further discovery requests absent leave of court for good cause shown. Discovery requests served on or before October 14, 1983, shall be complied with on or before June 25, 1984. Any motions to effectuate discovery compliance and for sanctions or for other purposes shall also be filed on or before June 25, 1984. Any supplementation of plaintiff's trial preparation order section A compliance shall be served and filed on or before July 2, 1984. Section B shall be complied with on or before July 9, 1984; section D shall be complied with on or before July 16, 1984. As of July 16, 1984, this case shall be deemed ready for trial, which shall proceed thereafter on a bifurcated basis, with the question of liability to be addressed first. This matter, notwithstanding plaintiff's *pro se* request in his section A compliance, shall remain as a trial to the court.

Upon completion of discovery, and before July 2, 1984, if counsel should advise the court of the desirability of holding a pre-trial/settlement conference, such shall be scheduled for no later than July 15, 1984, before United States Magistrate F. Owen Eagan.

### CONCLUSION

Accordingly, for the reasons and to the extent set forth above,

1. Defendants' motion for summary judgment is granted, except to the extent Hart asserts claims in contract and fraud deriving from the defendants' alleged breach of duties and obligations owed him as an individual, as to which it is denied.

2. Hart's motion for the appointment of a trustee/conservator and related relief is denied.

3. Hart's motion to substitute party defendants and related relief is denied.

4. Hart's motion to amend the cross-complaint is granted. An amended complaint shall be filed and served on or before June 1, 1984, defendants to plead responsively on or before June 15, 1984.

5. Defendants' motion for a protective order and the various pending objections and motions to quash are denied. Hart's "Request for Specific Exception" is granted, and his various motions to compel are denied.

SO ORDERED.

## ON MOTION FOR RELIEF FROM WAIVER OF RIGHT TO TRIAL BY JURY

On grounds that cross-claim plaintiff Sheldon Hart was obligated to make a jury demand and had failed timely and properly to do so with respect to the cross-claim—the only remaining matter in what began as a securities fraud class action as to which a jury demand was timely and properly endorsed—the court earlier denied Hart's motion under Fed.R.Civ.P. 38 seeking a trial by jury. Hart now moves the court to exercise its discretion under Fed.R.Civ.P. 39(b) to excuse his waiver and order a trial by jury. For the reasons stated below, plaintiff's motion is denied.

*Facts*

The remaining claim, commenced in March 1979 as a cross-claim by three National Telephone Company (the Company) officers—including Hart, the Company's founder and its former president, chief executive officer and chairman of the board of directors—is directed against the outside directors E. Clayton Gengras, Ralph A. Hart, Eli Shapiro and Roger Wilkins. All parties to the cross-claim were defendants in the 1975 securities fraud class action complaint in which purchasers of Company stock alleged that misstatements in and omissions from certain of the Company's public filings artificially inflated and undermined the integrity of the market for the Company's securities. The securities fraud class action, together with all counterclaims and all cross-claims other than the claim by Hart have been resolved or withdrawn. For a more detailed recitation of the nine-year history of this case, see the court's Ruling on Pending Motions (May 21, 1984).

The scope of Hart's cross-claim has expanded and contracted during its pendency. As originally asserted in eighteen paragraphs in March 1979, the cross-complaint—purportedly on behalf of a class of all holders of Company stock in an unspecified period—alleged that their stockholdings were rendered valueless by the machinations of the outside directors in a conspiracy to liquidate the company and drive it into bankruptcy. His co-plaintiffs apparently having withdrawn from the cross-claim, Hart alone filed a proposed amended cross-claim on November 18, 1980, wherein in some forty-three paragraphs the class allegations of the original cross-claim were detailed to include claims of fraudulent inducement to contract and breach of fiduciary duty. Apparently in lieu of filing this proposed amended cross-claim, Hart sought and was granted leave of court to file, on March 12, 1981, an amended four count, twenty-eight page pleading. Neither of these amendatory pleadings is asserted to have been the subject of a jury demand.

The court's May 21, 1984, ruling granted the outside directors' motion for summary judgment as to the claims (a) sounding in breach of fiduciary duty; (b) styled as a class action; and (c) alleging that a key contract alleged by Hart constituted a voting trust rather than a voting agreement. The remaining claims of alleged breach of contract and alleged fraudulent inducement to contract survived the motion. In that

ruling, the court adverted to references in some of Hart's filings, during a stint representing himself *pro se*, to an apparent expectation on his part that his claims would be tried to a jury. The ruling noted that notwithstanding these references or requests, the matter would be tried to the court.

Hart's counsel then moved that the court grant him a jury trial on the alternative grounds that (a) the jury demand endorsed on the face of the original and amended complaint in the underlying securities fraud class action sufficed to embrace and encompass the issues raised in Hart's cross-claim, so as to excuse the need for any further jury demand by Hart; and (b) that the "Wherefore" clause of the March 1979 pleading wherein Hart answered the amended securities fraud complaint and for the first time asserted cross-claims against, *inter alia*, the outside directors, sufficed to state a proper jury demand. The clause read:

> WHEREFORE the answering defendants demand: ... that the defendants, and the class that they represent, be awarded such damages as this court and a jury finds are warranted against the parties set forth in the ... cross claims.

In an order dated July 18, 1984, and filed July 23, 1984, the court denied Hart's Rule 38 motion on grounds that under Rule 38 and *Rosen v. Dick,* 639 F.2d 82 (2d Cir. 1980), the securities fraud class plaintiffs' general jury demand is ineffectual as to the issues involved in Hart's cross-claim, and that the above-noted "WHEREFORE" clause, the sole ground on which Hart bases his assertion of having demanded a jury in a timely and proper manner, is too oblique and equivocal to constitute an effective jury demand.

*Discussion*

I.

The Federal Rules of Civil Procedure proceed on the basic premise that a jury trial is waived unless a timely demand is filed. Rule 38, applicable generally to cases in the federal courts, requires the written demand to be served upon the adverse party no later than ten days after service of the last pleading directed to the issue. Rule 39(b) permits a district judge to exercise his discretion and grant a jury trial despite the failure of a party to comply with the time provision. *Cascone v. Ortho Pharmaceutical Corp.,* 702 F.2d 389, 391 (2d Cir.1983).

There is a wide divergence of views on how a court should exercise the discretion contemplated by Rule 39(b). Some courts hold that, while a judge is not required to allow an untimely request for a jury trial, only strong and compelling reasons to the contrary should preclude the favorable exercise of discretion. *See, e.g., Cox v. C.H. Masland & Sons,* 607 F.2d 138, 144 (5th Cir.1979); *AMF Tuboscope, Inc. v. Cunningham,* 352 F.2d 150, 155 (10th Cir. 1965). Other courts hold that a court's discretion to grant a jury trial absent a timely demand is exercisable only where there are special circumstances excusing the oversight or default. *See, e.g., General Tire & Rubber Co. v. Watkins,* 331 F.2d 192, 197–98 (4th Cir.1964), *cert. denied,* 377 U.S. 952, 84 S.Ct. 1629, 12 L.Ed.2d 498 (1964). *See also* 9 C. Wright and A. Miller, *Federal Practice and Procedure,* § 2334 at 113 (1971); *Cascone v. Ortho Pharmaceutical Corp.,* 94 F.R.D. 333 (S.D.N.Y. 1982) (discussing split in authority), *aff'd,* 702 F.2d 389.

In this circuit, the applicable standard is that set forth in *Noonan v. Cunard Steamship Co.,* 375 F.2d 69 (2d Cir.1967), wherein the court noted a trend of district court decisions that had confined the Rule 39(b) inquiry to a determination as to "whether the moving party's showing *beyond* mere inadvertence is sufficient to justify relief." *Id.* at 70 (emphasis in original). As "the settled course of decision had placed a gloss upon the Rule," *id.,* which a district court could not disregard, the court observed that to grant a motion based only on inadvertence would constitute reversible error. *See also Ligouri v. New York, N.H. & Htfd. R. Co.,* 26 F.R.D. 565, 566–67 (D.Conn.1961), quoting *Arnold v. Chicago, B. & Q.R. Co.,* 7 F.R.D. 678

(D.Neb.1947) ("as a matter of judicial administration, judicial indulgence [under Rule 39(b) ] ought rarely to grant a trial by jury in default of a timely request" therefor).

The Court of Appeals has enunciated a different and less circumscribed standard for the exercise of discretion to permit an untimely jury demand for cases removed to federal court. *See, e.g., Higgins v. Boeing Co.*, 526 F.2d 1004 (2d Cir.1975) (per curiam); *Cascone*, 702 F.2d 389. Where a plaintiff's action has been removed to federal court from a state tribunal, whose practice and procedure with respect to a timely jury demand and excusing the failure of the same may differ significantly from that pertaining under federal practice, our Court of Appeals has sanctioned a less rigid standard, noting that:

> [a]lthough we may not overlook lack of compliance with the federal procedural rules in removed cases, there is nonetheless some 'play in the joints' for accommodating a removed party who may not be at ease in the new surroundings imposed upon him. In removed cases, the argument of applying the rigid *Noonan* constraints on the district court's discretion is simply not as strong.

*Cascone*, 702 F.2d at 392. The *Cascone* court took issue with the determination below that *Noonan* (rigid rule for cases originating in the federal courts) had been substantially weakened by *Higgins* (more relaxed standard for removed diversity cases) and by the passage of time, holding:

> We do not consign *Noonan* to overruled status. Its holding shall continue to govern cases where it is applicable. We hold only that the matter at hand falls within *Higgins's* ambit rather than *Noonan's*, and the exercise of discretion was proper.

*Cascone*, 702 F.2d at 393.

More recently, in an age discrimination action filed originally in federal court, a majority of a panel of the Court of Appeals affirmed on the basis of *Noonan*, the denial of a *pro se* plaintiff's request for relief from waiver of a jury trial by failure to follow Rule 38. *Washington v. New York City Bd. of Estimate*, 709 F.2d 792 (2d Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 537, 78 L.Ed.2d 717 (1983). While Judge Oakes, in dissent on the propriety of applying a rigid procedural rule to the case of a *pro se* plaintiff, may have intimated concern as to the merits of the "narrow" *Noonan* view as compared to the "broader" view held by other courts, *id.* at 799, the rule for deciding Rule 39(b) motions in cases originating in federal court remains that enunciated in *Noonan*. It is "quite clear and strict: something beyond mere inadvertence of counsel is required to relieve a party from its waiver." *Alvarado v. Santana-Lopez*, 101 F.R.D. 367, 368 (S.D.N.Y.1984).

## II.

■ Notwithstanding the varied and imaginative arguments mustered by Hart in support of his contention that "something beyond mere inadvertence" is to be found here, they—just as similar arguments apparently raised in other cases, for Hart fails to show and the court did not find reported decisions in this circuit wherein *Noonan's* strict test was satisfied—fall short of the mark.

In essence, Hart's contention is that at all stages of this proceeding the parties have proceeded on the assumption that the cross-claim would be tried to a jury and that this fact suffices to show more than mere inadvertence. *See* Memorandum in Support of Motion Requesting Jury Trial, at 2. While long-standing acquiescence or agreement of the parties is a factor properly considered on a Rule 39(b) motion, *see Higgins*, 562 F.2d at 1007 (a removed case), Hart has shown neither that his assumption that the case would be tried to a jury was reasonable nor that this assumption was shared by defendants.

As the "WHEREFORE" clause set forth above makes passing and oblique reference both to the "court" and "a jury," it is in no way sufficient either to assert a demand of which the defendants and the court could reasonably take notice or to intimate an

expectation on the part of Hart as to the form of the trial. Similarly, the apparently off-the-cuff and now disavowed remarks of defendants' counsel in response to the court's questions regarding a trial by jury at oral argument in January 1981—a time when other aspects of the jury-triable underlying securities fraud class action were nearing compromise—are wholly ambiguous and equivocal and insufficient to constitute an agreement to a trial by jury or a waiver of any potential objections thereto. Hart's further suggestion that the inclusion of voir dire and jury charge segments in the court's standard Trial Preparation Order is of significance as to the court's or the parties' expectations is without merit; such order could reasonably be assumed to issue, and does in fact issue, to all cases and is complied with as applicable to the case in question.

The apparently parallel and long-standing maintenance by Hart of a conception that from March 1979 forward his cross-claim was triable to a jury and defendants' contrary contemplation is perhaps in substantial part explicable by the cross-claim's early status for docketing purposes at least as an adjunct to the securities fraud class action. As a consequence, it would appear that neither party sought, nor did the court *sua sponte* provide clarification as to the nature of the trial of this matter until it reached its present, trial-ready status. Had earlier clarification been provided, any slight prejudice which may have arisen with respect to the parties' maintaining opposing conceptions of the nature of the trial to come would have been minimized or eliminated. Under the strict rule of *Noonan*, however, Hart's Rule 39(b) motion must be denied, for his argument that he has established facts amounting to more than mere inadvertence of counsel is unconvincing.

The court's Trial Preparation Order shall remain in effect and upon its completion, and subject to the following, the matter shall be calendared for an early trial. Pursuant to 28 U.S.C. § 1292(b), the court grants Hart permission to make application within ten (10) days hereof to appeal the interlocutory orders of July 18, 1984 (filed July 23, 1984), denying his Rule 38 motion and the instant ruling denying his Rule 39 motion, as both colorably involve controlling questions of law as to which there is substantial ground for difference of opinion and as to which immediate appeal may materially advance the ultimate termination of this long-pending litigation. Upon Hart's determination not to pursue an appeal, or within ten (10) days of the disposition of his application for appeal and/or the appeal, trial may, at any time thereafter, be scheduled. If a pretrial/settlement conference is suggested as useful, such will be scheduled upon request by either party.

SO ORDERED.